FRANK P. ALISA and RACHAEL ALISA, et al., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Alisa v. Commissioner
Docket Nos. 5466-73, 6230-73, 3153-75, 3273-75.
United States Tax Court
T.C. Memo 1976-255; 1976 Tax Ct. Memo LEXIS 147; 35 T.C.M. (CCH) 1113; T.C.M. (RIA) 760255; August 17, 1976, Filed. Robert E. Schlusser, for the petitioners. Harris J. Belinkie, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined deficiencies in the Federal income tax of petitioners Frank P. Alisa and Rachael Alisa, together with additions to tax pursuant to section 6653(b), [2] *150 as follows: Docket No. 5466-73
Penalty
(Sec. 6653(b),
Year
Deficiency
I.R.C. 1954)
1967
$ 2,982.11
$ 1,491.05
1968
4,588.80
2,294.40
Docket No. 6230-73
1969
$ 869.49
$434.75
Docket No. 3153-75 [3]
1966
$ 2,212.48
$ 1,106.24
1970
8,124.65
4,062.32
Respondent also determined the following income tax deficiencies and additions to tax in respect of petitioner A & D, Inc., docket No. 3273-75: Taxable
Penalty Year
(Sec. 6653(b), Ended
Deficiency
I.R.C. 1954)
9/30/66
$ 3,234.24
$ 1,617.12
9/30/67 3,084.96
1,542.48
9/30/68 4,292.53
2,146.26
9/30/69 3,928.58
1,964.29
9/30/70
15,855.73
7,927.86
The parties have reached agreement concerning several adjustments involved in the foregoing determinations, and the issues remaining for decision are as follows: 1. Whether the income tax returns of *151 petitioner A & D, Inc., for its taxable years ended September 30 of 1966, 1968, and 1969 were "false or fraudulent" within the meaning of section 6501(c)(1), with the result that the bar of the 3-year statute of limitations on the assessment of income tax deficiencies is lifted for those years.Closely related is an issue as to whether any part of the deficiency for each of those years was due to fraud with the result that the additions to tax under section 6653(b) are applicable; 2. Whether petitioners Frank P. Alisa and Rachael Alisa received constructive dividend income for the calendar years 1967 and 1968, and if so, whether petitioner Rachael Alisa is entitled to the benefit of the innocent spouse provisions of section 6013(e) for those years; and 3. Whether an oral statement by petitioner Frank P. Alisa to a special agent of the Internal Revenue Service constituted a claim for refund on behalf of A & D, Inc., for its taxable year ended September 30, 1970, within the purview of section 6512(b). FINDINGS OF FACT At the time their petitions were filed, petitioners Frank P. Alisa and Rachael Alisa were legal residents of Wilimington, Delaware, and petitioner A & D, Inc. *152 (hereinafter A & D or sometimes the corporation), a Delaware business corporation, maintained its principal office in Wilmington, Delaware. Prior to October 2, 1969, all the outstanding stock of A & D was owned by petitioner Frank P. Alisa (hereinafter Alisa). On that date additional stock was issued so that 50 percent of the outstanding stock was owned by Alisa and 50 percent by his wife, petitioner Rachael Alisa, but she immediately granted her husband an irrevocable proxy to vote all her stock. That proxy remained in effect throughout the remainder of the period in issue. For purposes of this case, Alisa is considered to be the sole stockholder. A & D computed its taxable income on the basis of a fiscal year ending September 30, [4] employing the cash method of accounting. During the years in issue, A & D was engaged primarily in the construction of residential homes in a subdivision called Arbour Park, near Newark, New Jersey. A & D entered into written contracts of sale whereby purchasers of *153 homes in Arbour Park agreed to pay a base price for a standard model home. The base price was reflected on each settlement sheet, which was prepared by the attorney handling the settlement. At yearend the gross sale price was recorded in A & D's cash receipts journal and was reported as gross receipts on the tax return for the taxable year of sale. The cash receipts journal was maintained by the accountants who prepared A & D's income tax returns. The only record which Alisa personally maintained was the corporation's checking account. Alisa requested purchasers of homes in Arbour Park to pay him directly by check payable to "Frank P. Alisa" or occasionally in cash for modifications and anything additional to their homes, i.e., fireplaces, storm windows, structural alterations, etc. (hereinafter referred to as "extras"). These payments were separate and apart from the buyers' payments on the base price of the homes and did not appear on A & D's settlement sheets nor were they deposited to A & D's corporate bank account. No record was kept of these payments. A & D received income from "extras" in the following amounts: Payments
Taxable Year Ended
for "Extras"
9/30/66
$ 6,738.00
9/30/67 6,427.00
9/30/68 8,319.91
9/30/69 7,440.49
9/30/70
21,459.63
*154 After cashing the checks for "extras," Alisa kept the cash proceeds in a filing cabinet with the corporate records at A & D's field office in Arbour Park. He subsequently used the cash to pay individual subcontractors of the corporation in the following manner: A check on the corporate checking account would be written by Alisa but not signed. He would then give it to the subcontractor, who would endorse the back of the check and return it to Alisa as a receipt. Then Alisa would pay the subcontractor in cash. All subcontractor expenses so paid in cash were receipted with these checks. When Alisa prepared one of these "cash receipt checks," he also filled out a stub in the corporate checkbook in the same manner as for a regular check. A & D's accountant later used the checkbook stubs to prepare the cash disbursements journal and compute the expenses claimed as deductions on A & D's income tax returns. Alisa retained the cash receipt checks that the subcontractors had endorsed, and periodically, when the corporation had sufficient money in the corporate checking account, he would sign the front and back of a number of the checks and then cash them. The currency that was *155 received from cashing those checks also was retained in the filing cabinet for use in paying A & D's subcontractors. On occasions when Alisa used the corporation's money for personal, nonbusiness purposes, such amounts were reported on A & D's tax returns as compensation to him from A & D. Otherwise, none of the cash in the filing cabinet was used for his personal benefit or for that of his family, nor were any of his personal bills or debts paid with that money. Alisa stopped negotiating cash receipt checks through A & D's checking account in 1970, when the corporation began to run out of money. By September 1970 all the cash in the filing cabinet had been spent. A & D's tax return for each taxable year in issue was prepared by Ronald Truitt, C.P.A. (hereinafter Truitt), then a staff accountant in the firm of Bernard J. Daney, C.P.A. (hereinafter Daney), and, at the time of trial, a member of the firm. Truitt determined A & D's gross income from the home-purchase settlement sheets and from deposits to A & D's checking account. Around September 30, 1970, Truitt balanced A & D's checking account and, by comparing the checkbook stubs with the deposits, determined that A *156 & D's checking account was overdrawn by $64,000. On October 2, 1970, the bank confirmed the overdraft, and Truitt immediately contacted Alisa. It was at that time that Alisa first told Truitt about his method of paying subcontractors and negotiating the cash receipt checks. He told Truitt that the checks shown by the stubs were not outstanding but that they had been paid in cash with money received from "extras." Since Alisa did not tell Truitt of the payments for "extras" until October 1970, they had not been reported on A & D's returns for the fiscal years 1966 through 1969. Other than the "extras," all items of gross income had been reported on A & D's tax returns for those years. Truitt computed the amount of income from "extras" to be the approximate amount by which the corporate checking account was overdrawn, as reflected by the check stubs. Because it was impossible to allocate the "extras" to the actual year of receipt, $61,413.65 in "extras" income was included in gross receipts on the corporate return for its 1970 taxable year. At that time Truitt told Alisa that if, at a later time, it could be determined in which taxable years the "extras" income was properly *157 reportable, amended returns would have to be filed for those prior years and a refund would be due with respect to fiscal 1970. On February 17, 1971, A & D paid the total tax reported due on its fiscal 1970 return. On November 5, 1970 (after telling Truitt of the "extras" income but before the filing on January 25, 1971, of the corporate return for fiscal 1970), Alisa was contacted for the first time by a special agent of the Internal Revenue Service with respect to A & D's returns for the fiscal years 1966 through 1969. At a question-and-answer session with two Internal Revenue Service agents on January 28, 1971, regarding A & D's returns for its taxable years 1967 through 1969, Alisa informed the agents that the income from "extras" for those years had been reported on the corporate return for fiscal 1970. The agents were aware that Alisa contended that the income from "extras" had been reported on the corporate return for fiscal 1970. However, the taxable year 1970 was not part of their investigation, and they did not attempt to obtain the corporate cash receipt checks for that year. Later, at a meeting on April 7, 1972, with an Internal Revenue Service special agent, *158 Alisa mentioned the inclusion of all the "extras" income on A & D's fiscal 1970 return and the question of a refund of the tax paid with respect to that year if the "extras" income was to have been included in earlier years. A written memorandum of that meeting was prepared by Special Agent Robert K. Dieffenderfer, which contained the following statements: Mr. ALISA asked if the fact that he admitted he had not paid tax on the extras, and included them on his 1970 income tax return, would not preclude prosecution. Mr. Rivello * * * [Chief, Internal Revenue Service Interlligence Division] said the fact remained that he had not paid tax in the year it was due, and if he overpaid in 1970, an adjustment would be made after all criminal aspects of the case are concluded. * * *
Alisa left the meeting believing that he would receive a refund when the criminal aspects of the case were concluded. In the subsequent civil audit of A & D, respondent examined the corporate return for the 1970 fiscal year and, among other adjustments, determined that in addition to the $61,413.65 in "extras" reported in gross receipts, A & D had received but failed to report $21,459.63 in "extras" *159 income for that year. On December 12, 1973, Alisa, as an officer of A & D, was indicted in the United States District Court for the District of Delaware and charged with having made false statements under section 7206(1) in the filing of A & D's income tax returns for the taxable years ended September 30, 1967, to September 30, 1969, inclusive. On May 14, 1974, Alisa pleaded guilty to the count in the indictment relating to the taxable year ended September 30, 1967, and the remaining counts were dismissed. On August 7, 1974, Alisa was sentenced to 3 years' probation and fined $500.
On November 19, 1974, A & D's attorney sent a letter to respondent, referring to the conference on April 7, 1972, and computing a refund of $31,683.39, plus interest, claimed by A & D with respect to its taxable year ended September 30, 1970. Respondent did not give A & D a refund for its 1970 fiscal year but, to the contrary, determined a deficiency of $15,855.73, together with a penalty of $7,927.86 under section 6653(b). On the examination of the income tax returns of petitioners Frank P. Alisa and Rachael Alisa for 1967, 1968, and 1969, and the returns of petitioner Frank P. Alisa for 1966 *160 and 1970, respondent determined that the receipts for "extras" were taxable as constructive dividends from A & D.
OPINION 1. Fraudulent Returns Filed by A & D for Its Taxable Years Ended September 30 of 1966, 1968, and 1969
Petitioner A & D has conceded that for its taxable years ended September 30 of 1966, 1968, and 1969, [5] it received "extras" income which it failed to report on its income tax returns and, as a result, its Federal income tax for those years was understated. Respondent's notice of deficiency, however, was mailed more than 3 years after the filing of A & D's return for each of those years. Accordingly, section 6501(a) bars the assessment of deficiencies for those years unless A & D's returns were false or fraudulent within the purview of section 6501(c)(1). [6]
*161 Fraud is an intentional wrongdoing with the specific purpose of evading a tax believed by the taxpayer to be properly owing. Mitchell v. Commissioner,118 F.2d 308, 310 (5th Cir. 1941); Ross Glove Co.,60 T.C. 569, 608 (1973). The existence of fraud is an issue of fact to be determined upon a consideration of the entire record. William G. Stratton,54 T.C. 255, 284 (1970); Welburn Mayock,32 T.C. 966, 974 (1959). Procedurally, respondent bears the burden of proving the existence of fraud by clear and convincing evidence. See sec. 7454(a)[7]; Anson Beaver,55 T.C. 85, 92 (1970); Ross Glove Co.,supra at 607. If respondent has carried this burden, the limitations bar of section 6501(a) is lifted, and the determined fraud penalties under section 6653(b) must be sustained. Whether the evidence *162 shows that A & D's income tax returns for the fiscal years ended September 30 of 1966, 1968, and 1969 were fraudulent is a troublesome issue. Quite obviously, Alisa, as chief executive officer of A & D, had only a limited knowledge of accounting procedures and the related tax laws. The cash flow from A & D's construction business was insufficient to enable the corporation to meet always currently the demands of creditors and, in order to permit A & D to stretch the available funds to the maximum, Alisa evidently divided the available funds among the subcontractors, paying them in currency for their "extras" work. Despite Alisa's pleas of ignorance and inadvertency concerning proper accounting procedures, we have concluded that respondent has shown A & D's returns for its fiscal years 1966, 1968, and 1969 were fraudulent over the 4-year period beginning with fiscal 1966. Alisa negotiated all the "extras" contracts with the home purchasers and carefully instructed them to make their checks payable to him personally. Alisa cashed the checks and neither deposited their proceeds in A & D's bank account nor maintained any record reflecting the receipt of those funds. Alisa pleaded *163 guilty to a charge of making false statements under section 7206(1) in a return he filed on behalf of A & D for its 1967 taxable year. True, fraud must be proved for each year, but A & D's method of operations and reporting its income was the same for all 4 years. There is no convincing explanation of why, if A & D's 1967 return contained false statements as to the "extras" income, as Alisa admitted in his guilty plea, similar statements in the returns for the other 3 years were not also false. Careful consideration of the whole record leads us to conclude that Alisa, as A & D's chief executive officer and shareholder, consciously sought fraudulently to evade the payment of income tax on its "extras" income. Notwithstanding A & D's argument on the point, respondent did not have the burden of showing that A & D realized a profit from the "extras" construction work. The underpayment of A & D's income tax was not attributable to the omission of profits on its tax returns but, rather, was due to the failure to include the "extras" receipts in gross income even though the related costs were deducted, and such failure has been shown beyond doubt. Indeed, it is admitted. True, A & *164 D reported the omitted receipts in its return for the 1970 fiscal year. But that was done only after the fraud investigation began and Alisa had first attempted to mislead the special agents. We are aware Alisa had only a limited education, but he is an intelligent person, fully capable of distinguishing between the value of a dollar of receipts which is subject to income tax and a dollar which goes untaxed. 2. Issue of Constructive Dividends to Frank P. Alisa and Rachael Alisa During the Calendar Years 1967 and 1968
Respondent's determination that during the calendar years 1967 and 1968, petitioners Frank P. Alisa and Rachael Alisa received distributions from A & D which are taxable as dividends remains in dispute. [8]Petitioners bear the burden of proving that respondent's determination is erroneous. *165 A corporate distribution may be considered as a dividend to its shareholders even though no funds were formally distributed by the corporation or paid to the shareholders. In order to be treated as a dividend for tax purposes, however, ordinarily the distribution must be made for the personal benefit of a shareholder or in discharge of his personal obligation. Walter K.Dean,57 T.C. 32, 40 (1971); W. B. Rushing,52 T.C. 888, 893 (1969), affd. (without discussion of this issue) 441 F.2d 593 (5th Cir. 1971); Rapid Electric Co.,61 T.C. 232, 239 (1973); Challenge Manufacturing Co.,37 T.C. 650, 663 (1962). The fact that there may be only one controlling or dominating shareholder does not affect the requirement that he personally benefit from the questioned distribution. W. B. Rushing,52 T.C. at 894; Rapid Electric Co.,supra at 239. In the instant case, respondent relies mainly on one basic fact in contending that the Alisas received constructive dividends, i.e., that Alisa maintained in his filing cabinet a substantial amount of currency which was derived *166 from A & D's "extras" construction work and from his periodic negotiation of cash receipt checks on A & D's bank account. Since Alisa controlled these funds, respondent argues, he received dividends in the amounts thereof. Alisa testified, however, that the reason he maintained a cash reserve in his field office instead of in A & D's bank account was that A & D was short on working capital. To enable him to spread the available funds among several subcontractors, he paid them with currency. Had A & D maintained a large bank balance from which Alisa paid the subcontractors, one or more of them would have learned of the amount of the balance and would have demanded payment in full. Responding to such demands would have made it impossible to make partial payments to others. He also testified, credibly we believe, that of the money derived from "extras" and not reported as income in A & D's tax returns, none was used for his personal purposes unless it was reported in his own tax returns as income to him. There is no evidence to the contrary. Even though his financial activities have been the subject of exhaustive investigations, the evidence does not show that either his lifestyle *167 or his personal investments were such as to indicate that he personally benefitted from any of these "extras" payments. A & D's accountant stated, in corroboration of Alisa's testimony, that whenever corporate funds were used for Alisa's personal needs, such amounts were reported as income to Alisa. We hold that petitioners Frank P. Alisa and Rachael Alisa have carried their burden of showing that they did not personally benefit from the funds in question. [9] Therefore, they received no amounts therefrom which are taxable as constructive dividends in 1967 and 1968. 3. Issue of the Propriety of A & D's Claim for Refund for Its Fiscal Year Ended September 30, 1970
The parties are in agreement that A & D failed to properly report "extras" income for its fiscal years ended September 30 of 1966 through 1969. Truitt, A & D's accountant, testified, credibly we believe, that because the error was not discovered by him until 1970 and no records were available to indicate the dates *168 the income was actually received, he recommended that all the previously unreported "extras" income be reported on A & D's tax return for the taxable year ended September 30, 1970. He advised that later, when the income could be allocated properly to each individual year of its receipt, amended returns would have to be filed, reflecting the correct adjustments. As a result of the ensuing lengthy negotiations and investigation, the parties have reached an agreement as to the amounts of the "extras" income for the taxable years 1966 through 1969, and A & D now claims it is due a refund of a portion of its 1970 income tax payment in an amount currently disputed.
Respondent denies that A & D is due any refund of its 1970 income tax payment, maintaining that, even if A & D did overstate its 1970 income, this Court is without jurisdiction to grant the refund because no valid claim for refund was filed within the period of limitations mandated by section 6512(b). [10]
*169 Section 6512(b) gives this Court jurisdiction to determine whether a deficiency exists in a taxpayer's income tax and, if not, the amount of overpayment, if any, in income tax for any taxable year before the Court. However, section 6512(b)(2) does not permit a credit or refund of any portion of the tax unless this Court makes certain determinations as a part of its decision. The particular provision applicable in this case is section 6512(b)(2)(C), which, in general terms, limits the credit or refund to those amounts which were the subject of a timely claim for refund (as defined by section 6511[11]/), filed before the mailing of respondent's notice of deficiency. *170 In the instant case, A & D's fiscal year 1970 income tax return was filed on January 25, 1971, and pursuant to section 6511(a), the period of limitation for the filing of a claim for the refund of taxes paid with the return for that year ended 3 years later, on January 25, 1974.The notice of deficiency was not mailed to A & D until February 13, 1975. Therefore, this Court cannot find, as part of its decision herein, that A & D's taxable year 1970 tax was paid within the 3-year period prior to the mailing of the notice of deficiency. The issue remains as to whether a claim for refund was filed within that 3-year period. A & D asserts that a timely informal claim for refund was lodged with respondent during the meeting on April 7, 1972, between Alisa and officials of respondent's Intelligence Division. It is A & D's position that Alisa, by inquiring orally on that date as to the possibility of A & D's overpayment of its 1970 income tax, informally notified respondent of the claim for refund. Because respondent's agent summarized the parties' statements in the form of a written memorandum, petitioner A & D maintains that the claim was valid in all respects. *171 The validity of informal refund claims has long been recognized. United States v. Kales,314 U.S. 186, 194 (1941). In general, however, in order to be valid, an informal claim must have a written component which adequately notifies the Internal Revenue Service that a refund is sought for a particular year. American Radiator & Standard San. Corp. v. United States,318 F.2d 915, 920 (Ct. Cl. 1963); Rosengarten v. United States,181 F.Supp. 275, 278-279 (Ct. Cl. 1960), cert. denied 364 U.S. 822 (1960); Wrightsman Petroleum Co. v. United States,35 F.Supp. 86, 96 (Ct. Cl. 1940), cert. denied 313 U.S. 578 (1941). Without the submission of a valid claim, the Internal Revenue Service is under no obligation to ferret out possible grounds for a refund. Union Pacific Railroad Co. v. United States,389 F.2d 437, 445 (Ct. Cl. 1968). The specific issue before us is thus a narrow one, i.e., whether Alisa's conversation on April 7, 1972, with respondent's Intelligence Division constituted a valid informal claim for refund. While no particular form is necessary for refund claims, it is *172 clear that an oral claim made to an Internal Revenue Service agent is not sufficient compliance with the statute (sec. 6511) requiring the filing of a claim. Ritter v. United States,28 F.2d 265, 267 (3d Cir. 1928); Barenfeld v. United States,442 F.2d 371 (Ct. Cl. 1971); Sicanoff Vegetable Oil Corp. v. United States,181 F.Supp. 265, 269 (Ct. Cl. 1960); Wrightsman Petroleum Co. v. United States,35 F.Supp. at 96; International Arms & Fuze Co. v. United States,37 F.2d 771, 774 (Ct. Cl. 1930). Nor does the fact that the agent subsequently wrote a memorandum summarizing the oral statements suffice to validate the alleged claim; the failure to file a written claim may be taken as an indication the taxpayer does not intend to prosecute his oral claim. See Benenson v. United States,257 F.Supp. 101, 108 (S.D.N.Y. 1966). See also Wrightsman Petroleum Co. v. United States,35 F.Supp. at 96. We must conclude, therefore, that Alisa's conversation with respondent's representatives on April 7, 1972, did not constitute a valid refund claim. A review of the agent's memorandum *173 concerning that conversation clearly shows that when the comments in question were made, Alisa was primarily concerned with criminal actions pending against him and his corporation, A & D. Were it not for respondent's agent, no record of the conversation would have been kept as Alisa made no attempt in his own behalf to record the conversation or further press the issue until well after the period of limitation for refund claims concerning 1970 had run. In light of all the facts surrounding the April 7, 1972, meeting, Alisa's comments were simply insufficient to properly apprise respondent of any intention he had, on A & D's behalf, to pursue a refund claim for its 1970 fiscal year. Because no statutory basis for this Court's jurisdiction has been established, A & D's claim for refund based on an overpayment of its income tax for its 1970 taxable year must be denied. At our request, the parties submitted supplemental briefs dealing with the applicability of sections 1311 through 1314 to lift the statute of limitations bar on a refund for the taxable year ended September 30, 1970, on the ground that $28,925.40 of the "extras" income reported in A & D's 1970 return was also included *174 in A & D's gross income for the taxable years ended September 30 of 1966 through 1969. Petitioner A & D asks us, "in order to avoid additional administrative and judicial proceedings," to reflect this "[double] inclusion" (sec. 1312(1)) in the Court's decision in the present proceeding. On further consideration of the matter, however, we have concluded that this Court lacks jurisdiction to do so. Wiener Machinery Co.,16 T.C. 48, 54 (1951). From the evidence before us, it is clear that of the $61,413.65 in "extras" income reported by A & D in its 1970 income tax return, $28,925.40 of that amount was properly allocable to the taxable years 1966, 1967, 1968, and 1969. We do not purport to pass on the merits of A & D's claim as to the applicability of statutory mitigation under sections 1311 through 1314. We only point out that the finality of the decision of this Court, holding that the controverted amounts were properly includable in A & D's taxable income for the taxable years ended September 30 of. 1966 through 1969, is essential in order to lift the bar of limitations on a refund for the taxable year ended September 30, 1970. To reflect the foregoing, *175 Decisions will be entered under Rule 155. Footnotes
1. The following cases are consolidated herewith: Frank P. Alisa and Rachael Alisa, docket No. 6230-73; Frank P. Alisa, docket No. 3153-75; and A & D, Inc., docket No. 3273-75.↩
2. All section references are to the Internal Revenue Code of 1954, as in effect during the tax years in issue. ↩
3. Although the notice of deficiency in this docket was addressed and mailed to petitioner Frank P. Alisa individually, he and petitioner Rachael Alisa filed a joint petition with this Court for a redetermination of the deficiencies set forth in that notice. Pursuant to a motion filed by respondent, the Court entered an order on June 9, 1975, dismissing this case for lack of jurisdiction so far as it relates to petitioner Rachael Alisa, striking so much of the petition as relates to her, and amending the caption so as to pertain to petitioner Frank P. Alisa individually.↩
4. When not specified hereinafter, references to A & D's taxable or fiscal year shall be construed to indicate the period ended September 30 of the given year.↩
5. Petitioner A & D has conceded that it is liable for the determined deficiency and fraud penalty for the taxable year ended Sept. 30, 1967. Respondent concedes that A & D's income tax return for its taxable year ended Sept. 30, 1970, was not fraudulent and that any further assessment of a deficiency for that year is barred. ↩
6. SEC. 6501. LIMITATIONS ON ASSESSMENT AND COLLECTION. (c) Exceptions.-- (1) False return.--In the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed, or a proceeding in court for collection of such tax may be begun without assessment, at any time.↩
7. SEC. 7454. BURDEN OF PROOF IN FRAUD AND TRANSFEREE CASES. (a) Fraud.--In any proceeding involving the issue whether the petitioner has been guilty of fraud with intent to evade tax, the burden of proof in respect of such issue shall be upon the Secretary or his delegate.↩
8. Based on the evidence at trial, respondent concedes that petitioners Frank P. Alisa and Rachael Alisa are not liable for the sec. 6653(b)↩ additions to tax for these years and, further, that assessment of the determined deficiencies for 1966, 1969, and 1970 is barred by limitations. The limitations period for the assessment of deficiencies for 1967 and 1968 is open by agreement of the parties.
9. Having decided that the Alisas had no income tax deficiencies for 1967 and 1968, we need not reach the issue as to the applicability of sec. 6013(e) in respect of Rachael Alisa.↩
10. SEC. 6512. LIMITATIONS IN CASE OF PETITION TO TAX COURT. (b) Overpayment Determined by Tax Court.-- (1) Jurisdiction to determine.-- If the Tax Court finds that there is no deficiency and further finds that the taxpayer has made an overpayment of income tax for the * * * taxable year * * * to which such petition relates, in respect of which the Secretary or his delegate determined the deficiency, or finds that there is a deficiency but that the taxpayer has made an overpayment of such tax, the Tax Court shall have jurisdiction to determine the amount of such overpayment, and such amount shall, when the decision of the Tax Court has become final, be credited or refunded to the taxpayer. (2) Limit on amount of credit or refund.--No such credit or refund shall be allowed or made of any portion of the tax unless the Tax Court determines as part of its decision that such portion was paid-- (A) after the mailing of the notice of deficiency, (B) within the period which would be applicable under section 6511(b)(2), (c), or (d), if on the date of the mailing of the notice of deficiency a claim had been filed (whether or not filed) stating the grounds upon which the Tax Court finds that there is an overpayment, or (C) within the period which would be applicable under section 6511(b)(2), (c), or (d), in respect of any claim for refund filed within the applicable period specified in section 6511 and before the date of the mailing of the notice of deficiency-- (i) which had not been disallowed before that date, (ii) which had been disallowed before that date and in respect of which a timely suit for refund could have been commenced as of that date, or (iii) in respect of which a suit for refund had been commenced before that date and within the period specified in section 6532↩.
11. / SEC. 6511. LIMITATIONS ON CREDIT OR REFUND. (a) Period of Limitation on Filing Claim.--Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid. Claim for credit or refund of an overpayment of any tax imposed by this title which is required to be paid by means of a stamp shall be filed by the taxpayer within 3 years from the time the tax was paid. (b) Limitation on Allowance of Credits and Refunds.-- (1) Filing of claim within prescribed period.--No credit or refund shall be allowed or made after the expiration of the period of limitation prescribed in subsection (a) for the filing of a claim for credit or refund, unless a claim for credit or refund is filed by the taxpayer within such period. * * *↩