Olaf C. AKLAND, and Bertha A. Akland, et al., Petitioners/Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent/Appellee.

No. 84–7009.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 15, 1985.

Decided July 31, 1985.

John R. Bernard, Bernard & Pinatelli, San Francisco, Cal., for petitioners, appellants.

William A. Whitledge, U.S. Dept. of Justice, Washington, D.C., for respondent, appellee.

Before FLETCHER, BOOCHEVER, and NORRIS, Circuit Judges.

BOOCHEVER, Circuit Judge:

Taxpayers appeal the Tax Court's finding of deficiencies for the years 1976 through 1979 and its imposition of penalties for fraud. We affirm both the findings of deficiency and the penalties.

## I. BACKGROUND

Olaf and Bertha Akland, together with their son and daughter-in-law Curtis and Arden Akland, (the Aklands) own a business that sells and services irrigation systems (the corporation).

In 1976, the Aklands and their part-time bookkeeper attended a two-day seminar given by the American Law Association (ALA) and its founder, Karl Dahlstrom. The purpose of the seminar was to instruct attendees how to reduce their tax liability through the use of foreign trusts.

The Aklands established trusts to further two schemes of tax avoidance. The Tax Court determined deficiencies in both cases, but taxpayers appeal the deficiencies and penalties in only one. That scheme was effectuated in the following manner. Curtis Akland travelled to Grand Turk Island and there formed four trusts with the aid of a local resident. Curtis and his father were named trustees of trust one (A.K. Land), which in turn was trustee and owner of trust two (Delta). Trust two owned and was trustee for the remaining pair (Karolina and Triangle). Bank accounts were established in the name of each trust in different cities in Oregon and Washington.

To reduce taxes, Curtis drew up invoices so that it appeared suppliers had sold goods to trusts three and four, which then resold them to the corporation at grossly inflated prices. The goods were never sent to Grand Turk Island. Since the owners of the trusts and the corporation were identical, these sales differed from direct sales to the corporation only on paper. The corporation transferred funds in the amount of the sale price to the trusts' bank accounts. In one instance, a vendor supplied goods to the corporation for $45.02. Curtis voided the check which had been prepared by the corporation and issued to the supplier a check which was drawn on the bank account of trust four. Curtis then prepared a new invoice, pursuant to which the corporation bought the goods from trust four for $18,823.27. In this way, goods which cost the trusts less than $5,000 were sold to the

corporation for $282,000 during the years in issue. The corporation deducted the larger amount as a business expense.

Trusts three and four showed as income on their United States tax returns the payments received from the corporation. They then, however, distributed those monies to their parent, trust two, and claimed a deduction therefor. Trust two, as a nonresident trust which allegedly had no source income from and no operations in this country, was not required to file tax returns here.

Trust two then loaned the money back to trusts three and four, which gave it demand notes. Trust two gifted the notes to Curtis and Olaf. (Gifts are not taxed as income under the Internal Revenue Code. I.R.C. § 102.[1]) The Aklands then demanded and received payment of the notes from their makers, trusts three and four.

The Aklands deposited the cash they received in their personal bank accounts, and commingled it with other funds. Much of the proceeds of the notes was eventually loaned to the corporation, which paid interest to the Aklands. The Tax Court found that portions of the proceeds were used to pay the Aklands' personal expenses. Defendants argue that the balances in these accounts did not drop below the amount of the deposited notes except insofar as they made loans to the corporation, and that they therefore did not spend that cash.

## II. DISCUSSION

### A. *Deficiencies*

■ The Tax Court found that the amount received by the Aklands from the demand notes represented constructive dividends from the corporation. Defendants do not contest that this is a finding of fact, reversible only if clearly erroneous. *See Noble v. Commissioner*, 368 F.2d 439, 445 (9th Cir.1966).

When a transaction, in substance, reduces a corporation's earnings and profits

for the benefit of its shareholders, a dividend results. *See, e.g., id.* at 443. Defendants argue that the particular funds received from the trusts remained in their bank accounts and were never spent. Therefore, they argue, they received no benefit from the money and it cannot be deemed a dividend. They cite two cases. In *Rosencrans v. Commissioner*, 13 T.C.M. (CCH) 176, 177 (1954), a sole shareholder kept corporate funds in a safe deposit box for three years and then used them to purchase property for the corporation. In *Alisa v. Commissioner*, 35 T.C.M. (CCH) 1113, 1118 (1976), a sole shareholder kept corporate cash in a filing cabinet and ordinarily used it to pay corporate debts. Occasionally he paid personal expenses with some of the cash, but when he did so he declared it as income. In each case the Tax Court found no dividend.

Those cases are distinct from this one. In each, an ambiguous indication of ownership arose merely from the physical placement of money. But here, taxpayers claimed the funds were their own. If they had intended the funds to be the property of the corporation, this could have easily been accomplished by trust two gifting the notes to it directly. Instead, the Aklands chose to receive the notes themselves. The distribution of the demand notes from trust two to the Aklands was equivalent to their receiving a demand note from the corporation. The distribution of such a note is a dividend. I.R.C. § 316(a) ("any distribution of property"); *Denver & Rio Grande Western Railroad v. United States*, 318 F.2d 922, 924–25, 162 Ct.Cl. 1 (1963).

Taxpayers' subsequent decision to loan the proceeds of the notes to the corporation (after the notes were redeemed) rather than to purchase goods and services does not postpone recognition of that income for tax purposes. *Denver & Rio Grande*, 318 F.2d at 925. To hold otherwise would be tantamount to saying that shareholders are taxed not when they receive cash divi-

---

1. All citations are to the Internal Revenue Code of 1954 as amended and applicable to the tax years in question.

dends, but when they spend them. This is not the law. *See* I.R.C. §§ 1, 61(a)(7); *International Bedaux Co. v. Commissioner*, 204 F.2d 870, 873 (2d Cir.1953).

### B. *Fraud*

■ The Tax Court, pursuant to section 6653(b) of the Internal Revenue Code, imposed a fraud penalty upon the Aklands and the corporation equal to fifty percent of the deficiencies found against them.

Defendants concede that the finding of fraud is factual and will be reversed only if clearly erroneous. *See Lord v. Commissioner*, 525 F.2d 741, 742 (9th Cir.1975). Moreover, the government need not show the exact amount of deficiency that is due to fraud but only that some part of it is. I.R.C. § 6653(b); *Conforte v. Commissioner*, 692 F.2d 587, 590 (9th Cir.1982); *Otsuki v. Commissioner*, 53 T.C. 96, 105 (1969).

■ "In the context of the 50 percent penalty of section 6653, fraud is intentional wrongdoing on the part of the taxpayer with the specific intent to avoid a tax known to be owing." *Conforte*, 692 F.2d at 592 (citing *Powell v. Granquist*, 252 F.2d 56, 60 (9th Cir.1958)). The Commissioner must prove fraud by clear and convincing evidence, I.R.C. § 7454(a); *Stone v. Commissioner*, 56 T.C. 213, 220 (1971), but intent can be inferred from strong circumstantial evidence, *Spies v. United States*, 317 U.S. 492, 499, 63 S.Ct. 364, 368, 87 L.Ed. 418 (1943); *Powell*, 252 F.2d at 61; *Stone*, 56 T.C. at 223–24.

■ Taxpayers make two arguments. In *United States v. Dahlstrom*, 713 F.2d 1423 (9th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 2363, 80 L.Ed.2d 835 (1984), this court reversed the criminal conviction of Karl Dahlstrom for organizing and advocating, during the tax years involved here, the ALA scheme in which these defendants participated. Under I.R.C. § 7206(2), one element of the crime of aiding in the preparation of a fraudulent tax return is that defendant act wilfully. The definition of wilfulness under section 7206(2) is very similar to that of specific intent in section

6653(b), the provision on which the Aklands' penalties are based. *See* 713 F.2d at 1427 (" 'voluntary intentional violation of a known legal duty,' " *quoting United States v. Pomponio*, 429 U.S. 10, 12, 97 S.Ct. 22, 23, 50 L.Ed.2d 12 (1976)). The court found Dahlstrom innocent because it was

> convinced that the legality of the tax shelter program advocated by the appellants in this case was completely unsettled by any clearly relevant precedent [during the period involved here]. "It is settled that when the law ... is highly debatable, a defendant—actually or imputedly—lacks the requisite intent to violate it."

713 F.2d at 1428 (quoting *United States v. Critzer*, 498 F.2d 1160, 1162 (4th Cir.1974)).

Defendants also argue that they fully believed Dahlstrom's representations that the scheme was legal and that therefore, even apart from the state of the law, they did not possess the requisite intent to evade a known duty.

The *Dahlstrom* case is distinguishable. First, although specific intent is a requisite of both civil fraud and the criminal statute, the evidence in the criminal case must enable a " 'rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt.' " *Dahlstrom*, 713 F.2d at 1425 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). In contrast, we must uphold the tax court unless we are left with the definite and firm conviction, *Baumgardner v. Commissioner*, 251 F.2d 311, 313 (9th Cir.1957), that there was no clear and convincing evidence of fraud, *id.* at 322; *see also Mensik v. Commissioner*, 328 F.2d 147, 150 (7th Cir.) ("[c]ivil fraud need not be proved beyond a reasonable doubt"), *cert. denied*, 379 U.S. 827, 85 S.Ct. 55, 13 L.Ed.2d 37 (1964).

Second, the tax shelter that the *Dahlstrom* court said was of dubious legality was an abstract program in which money was first put in the overseas trust (numbers three and four in this case) by the purchase of goods and services from it (by the corpo-

ration in our case). *See Dahlstrom*, 713 F.2d at 1425. There is no indication the *Dahlstrom* court was confronted with the gross inflations of sales prices that in this case resulted in approximately five thousand dollars worth of goods being sold to the domestic corporation for $282,000, thereby reducing its taxable profits by about $277,000. Since the Aklands both "sold" and "purchased" the goods, they knew how much money was being drained from the taxable profits of the corporation. The *Dahlstrom* court did not hold that the method of transferring money into the overseas trusts cannot be evidence of fraud and we hold that the deliberate facade used here of sales at exorbitant prices is such evidence.

In addition, when IRS agents audited the corporation's income tax returns, they repeatedly asked Curtis Akland if the corporation had any association with business trusts. Curtis falsely denied any knowledge of transactions such as those described above. Although Curtis claimed to be following instructions received from the ALA course, his denial is strong evidence that he believed the transactions to be unlawful.

The nature and extent of the ostensible sales and Curtis' denial of them is evidence of specific intent. We cannot conclude that the trial court's finding of fraud was clearly erroneous.

### C. *Discrimination*

■ Defendants allege perfunctorily that the government impermissibly discriminated against them by not prosecuting other participants in the ALA program. They cite Justice Frankfurter's concurrence in *United States v. Kaiser*, 363 U.S. 299, 80 S.Ct. 1204, 4 L.Ed.2d 1233 (1960), as condemning selective prosecution. Justice Frankfurter, however, found no selective prosecution because taxpayers who had been prosecuted were not situated similarly to those who had not been. *See id.* at 308–14, 80 S.Ct. at 1210–13 (Frankfurter, J., concurring). Similarly, here appellants presented no evidence that other partici-

pants in the ALA program acted in such blatant disregard of the tax laws. *See also Wayte v. United States*, — U.S. —, — & n. 10, 105 S.Ct. 1524, 1531 & n. 10, 84 L.Ed.2d 547 (1985) (to show selective prosecution, petitioner must show discriminatory effect and ordinarily must show discriminatory intent).

The judgment of the Tax Court is AFFIRMED.