DAVID BYRON WILBER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Wilber v. Commissioner
Docket No. 8163-86.
United States Tax Court
T.C. Memo 1987-439; 1987 Tax Ct. Memo LEXIS 436; 54 T.C.M. (CCH) 380; T.C.M. (RIA) 87439; August 31, 1987. Robert J. Burbank, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined deficiencies in and additions to petitioner's Federal income tax as follows: ADDITIONS TO TAX
Section
Section
Year
Deficiency
6654 [1]
6653(b)
1977
$ 16,546
$ 195
$ 8,273
1978
21,260
692
10,630
The sole issue is whether *437 respondent's determination of section 6653(b) additions to tax should be sustained. FINDINGS OF FACT Some of the facts have been deemed stipulated and are found accordingly. The stipulation of facts and the exhibits attached thereto are incorporated herein by reference. Petitioner resided in St. Louis, Missouri, at the time his petition herein was filed. Petitioner filed no returns for the years in issue. Petitioner is married, but his wife is not a party to this case. Petitioner, though having only a tenth-grade education, is an intelligent sophisticated businessman. From approximately 1964 to 1970, petitioner worked as a real estate agent. In 1970, after passing the appropriate test, petitioner became a real estate broker licensed by the State of Missouri. As of the time of trial, petitioner continued to be a licensed real estate broker. From 1970 to 1978, petitioner operated his real estate brokerage business through a wholly owned corporation, Dave Wilber Realty, Inc. ("Realty"). Realty's corporate charter expired at the end of 1977, and since then petitioner has operated his real estate brokerage business as a sole proprietorship. Petitioner filed valid *438 income tax returns for the 1973 through 1976 calendar years. Realty filed valid income tax returns for the 1975 and 1976 calendar years. Realty filed a 1977 tax return valid in all respects except that the following statement was made on the return: The numbers shown herein are nothing but numbers and in no way does filer of return acknowledge any income nor assets nor receipts in dollars of gold or silver coin as per Art. 1, Sec. 10, U.S. Constitution and Coinage Acts, 1792-1900. This statement reflects petitioner's misconception, acquired some time around 1976, that "dollar" is an indefinable term and that he cannot measure his income, file returns, or pay tax until "dollar" is defined. As a result of his misconception, petitioner failed to file returns during the years at issue, though he had taxable income in each of such years in excess of $ 30,000. In October of 1978, the Internal Revenue Service ("IRS") began an audit of petitioner's 1977 and 1978 taxable years. Petitioner maintained throughout the audit his frivolous position with respect to the indefinable "dollar." In a letter sent to respondent's agent, and later published in the South County News newspaper as *439 an open letter to the IRS, petitioner denied a request by the agent to examine petitioner's and Realty's books and a request for a meeting stating: I am sorry * * * but there is no useful purpose in your viewing my records. * * * the records are meaningless. There are no records that I paid or received any dollar quantities of the money of account of the United States unless you want to inform me that monetized debt units * * * are by law, the money of account of the United States * * *.
Petitioner never did provide respondent access to his or Realty's books. In reaction to the IRS's issuance of summonses to third parties or petitioner's belief that the IRS would issue summonses to third parties, petitioner sent such third parties "warnings" threatening a civil suit should they provide the IRS with information before requiring the IRS to define "dollar." In a letter sent to a financial institution with regard to a summons issued by respondent to such financial institution, petitioner again threatened a law suit should the financial institution provide the IRS with information without regard to the "fact" that the dollar is indefinable. Prior to and during the years at issue, *440 petitioner and his wife maintained a joint checking account. In 1977, petitioner opened a checking account using his middle and last names, Byron Wilber. Petitioner informed his tenants to begin making rental payments checks payable to Byron Wilber. In 1981, petitioner authorized a newsletter espousing his views on the indefinable dollar, attached to which was a pamphlet which advocated the use of cash to avoid detection by the IRS of individuals' money transfers. Petitioner practiced what he preached in that he, to an extent, dealt in cash and avoided banks and checking accounts. The IRS's audit of petitioner's 1977 and 1978 taxable years ultimately led to a grand jury indictment and a jury-trial conviction of petitioner for violating section 7203, specifically for willfully failing to file returns for the years at issue. Petitioner spent seven months in jail after his conviction was affirmed. See United States v. Wilber,696 F.2d 79 (8th Cir. 1982). Petitioner was not represented by counsel and did not represent himself. Petitioner's presence at trial was solely in his capacity as a subpoenaed witness. OPINION At trial the Court dismissed petitioner's *441 case as to all issues for which petitioner bore the burden of proof. Accordingly, the only issue before the Court is whether respondent's determination of the section 6653(b) addition to tax should be sustained. During the years in issue, section 6653(b) provided for an addition to tax equal to 50 percent of an underpayment, where any portion of such underpayment was due to fraud. Fraud is an intentional wrongdoing motivated by a specific purpose to evade a tax known or believed to be owing. Akland v. Commissioner,767 F.2d 618, 621 (9th Cir. 1985), affg. a Memorandum Opinion of this Court; Hebrank v. Commissioner,81 T.C. 640, 642 (1983). Respondent bears the burden of proving fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b); Akland v. Commissioner, supra;Kotmair v. Commissioner,86 T.C. 1253, 1259-1260 (1986). The presence of a fraud is a factual question to be determined by an examination of the entire record. Kotmair v. Commissioner, supra at 1259. As a result of petitioner's conviction pursuant to section 7203, he is collaterally estopped from denying that he willfully failed *442 to file returns for the years in issue. Castillo v. Commissioner,84 T.C. 405 (1985). In fact, petitioner admits that he failed to file returns during the years in issue. However, willful failure to file returns, without more, is not sufficient to prove fraud. Kotmair v. Commissioner, supra at 1260. Failure to file may, however, be considered in connection with other facts in determining whether an underpayment is due to fraud. Beaver v. Commissioner,55 T.C. 85, 93 (1970). Respondent has proven that petitioner failed to file returns for the years in issue; had substantial income for the years in issue; threatened civil suits against third parties should they comply with summonses issued by respondent; utilized a checking account in a name he normally did not use; began utilizing cash to conceal transfer of money; and refused to cooperate with respondent's agents. Petitioner had filed returns for years prior to the years at issue and was thus aware of his Federal income tax obligations. On these facts, we hold that respondent has met his burden of proving fraud by clear and convincing evidence for each of the years at issue. *443 Respondent's determination of additions to tax for fraud is sustained. [2]
Decision will be entered for the respondent. *444 Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. A different result is not compelled by Raley v. Commissioner,676 F.2d 980 (3d Cir. 1982), revg. a Memorandum Opinion of this Court; or Zell v. Commissioner,763 F.2d 1139 (10th Cir. 1985), affg. a Memorandum Opinion of this Court. Cf. Granado v. Commissioner,792 F.2d 91 (7th Cir. 1986), affg. a Memorandum Opinion of this Court. During the years at issue in Raley, the taxpayer sent to the Internal Revenue Service and the Secretary of the Treasury numerous letters which informed them that he would never voluntarily pay an income tax and he had filed false Forms W-4E. The Third Circuit held that the Commissioner had not proved fraud because the taxpayer "went out of his way to inform every person involved in the collection process that he was not going to pay any income taxes." In the present case, petitioner's letter to respondent's agent falls far short of the standard established in Raley.↩Indeed the letter was sent by petitioner only after the Internal Revenue Service had contacted him.