JAMES JAY TSCHUDY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Tschudy v. Commissioner
Docket No. 12060-91
United States Tax Court
T.C. Memo 1993-567; 1993 Tax Ct. Memo LEXIS 576; 66 T.C.M. (CCH) 1461; November 30, 1993, Filed *576 Decision will be entered under Rule 155. For petitioner: John W. Sunnen. For respondent: Karen Nicholson Sommers. FAY
FAY
MEMORANDUM OPINION FAY, Judge: By statutory notice of deficiency, dated March 18, 1991, respondent determined deficiencies in and additions to petitioner's Federal income taxes in the following amounts: Additions to Tax Sec.
Sec.
Sec. Sec.
Year
Deficiency
6653(b)(1)
6653(b)(2)
6654 6661
1982
$ 19,216
$ 9,608
[1]
$ 1,871
$ 4,046.75
1983
21,038
10,519
[1]
1,286
5,259.50
1984
22,992
11,496
11,444
4,680.25
All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated. Petitioner failed to file individual income tax returns for the taxable years 1982, 1983, and 1984. Respondent, by use of third-party summonses and the bank deposits method, determined that petitioner received gross income from his counseling practice in the amounts of $ 45,938, $ 52,261, and $ 56,254 for the taxable *577 years 1982, 1983, and 1984, respectively, and issued her notice of deficiency based on these figures. Petitioner now concedes that the income received from the counseling services constitutes income to him. The supplemental stipulation of facts, filed May 7, 1992, indicates that the parties agreed to the amounts which are properly included in petitioner's income for the years 1982, 1983, and 1984 and includes stipulated deficiencies in the amounts of $ 14,540, $ 12,192, and $ 16,801, respectively, as opposed to deficiencies of $ 19,216, $ 21,038, and $ 22,992, respectively, contained in the notice of deficiency for the years in question. Respondent concedes the addition to tax under section 6661 for all 3 years. The remaining issues for decision are whether petitioner is liable for the additions to tax pursuant to section 6653(b)(1) and (2), or, if fraud is not found to exist, whether petitioner is liable for the additions to tax for negligence pursuant to section 6653(a)(1) and (2); and whether petitioner failed to pay estimated tax for the taxable years 1982, 1983, and 1984 in accordance with the provisions of section 6654. Background
A stipulation of facts, the joint *578 exhibits, and a supplemental stipulation of facts were filed by the parties on May 7, 1992. By this reference, these facts are so found and incorporated herein. At the time of the filing of the petition, petitioner resided in La Jolla, California. Petitioner holds a bachelor's degree in psychology from the University of Utah, 1950, a master's degree in science from Brigham Young University, 1953, and a doctor of philosophy degree in counseling from the University of California at Berkeley, 1958. During the taxable years 1982, 1983, and 1984, petitioner was a licensed psychologist and a licensed marriage, family, and child counselor. Petitioner is a longstanding member of the Mormon Church. He has also been very active over the years with the church and has had many opportunities to teach religious classes through the church. In fact, petitioner's religious training and background began as a toddler, at which time petitioner quoted Scriptures and sang hymns with his mother in the pulpit as she held evangelical meetings in Los Angeles, California. On November 20, 1979, this Court filed its opinion in Tschudy v. Commissioner, T.C. Memo. 1979-459. *579 In Tschudy, involving the same taxpayer as is involved in the instant case, this Court sustained the Commissioner's disallowance of approximately $ 17,215 in itemized deductions and Schedule C business expense deductions taken for the 1975 tax year, finding Petitioner, at the trial, specifically refused to produce any evidence to substantiate or testify with respect to any deduction disallowed by respondent * * * [except to show entitlement to] dependency exemptions * * * and to show that he made alimony payments to his former wife of $ 2,800. * * *
Id. In that case, petitioner frivolously asserted Fourth, Fifth and Seventh Amendment Constitutional law principles in an attempt to avoid production of records sought by the Commissioner to substantiate deductions taken on petitioner's 1975 return. In 1979, after conversations with his son, and during the period petitioner was involved in litigation of the Tax Court case mentioned above, petitioner became aware of the Universal Life Church, Inc. (ULC), through a magazine article, which informed him that he could start a church by mail and obtain taxfree status. Also in 1979, petitioner received his ULC ordination *580 certificate for a fee of $ 5 from the ULC of Modesto. Petitioner was assigned ULC charter numbers 29436 and 29412. Upon this occurrence and petitioner's establishment of his own ULC chapter, petitioner, who had previously filed Federal income tax returns for several years, stopped filing income tax returns beginning with the return due for the 1980 tax year. In 1979 petitioner also established the First AmendmentSociety of America Institute (FASA Institute), which was a counterpart of petitioner's ULC chapter. Petitioner worked as a counselor during the years at issue and treated patients who would come to him for both group and individual counseling. As a result of his counseling services, petitioner received fees from the patients. Additionally, petitioner would submit insurance claim forms for the counseling services he performed and would receive reimbursement from various insurance companies. The receipts for the counseling services were deposited into bank accounts at Orange National Bank set up by petitioner. [1] Petitioner had signature authority over these bank accounts. Money was used from these accounts to pay the personal living expenses of petitioner during all *581 3 years in question. FASA Institute had offices located in Orange, California, during the years in issue; however, it was never incorporated during this time. FASA Institute also employed a Gail Conyers-Hughes (Hughes) as a part-time assistant counselor during the years in issue. Hughes worked with petitioner and was paid for the services *582 she rendered. Hughes also testified on behalf of petitioner at trial. In addition to individual counseling, petitioner offered patients at FASA Institute group counseling, with an, arguably, religious tone, for which a fee was charged. One such patient during 1981 and 1982, who was the sole patient to testify at trial, was Dolores Jackson (Jackson). Jackson testified she was treated for a nervous disorder by petitioner approximately twice per week during 1982 and that she also paid for the counseling treatment she received from petitioner. In 1979, after the Tax Court trial with respect to his 1975 tax return, and before the opinion upholding substantially all of the Commissioner's determination of deficiency was filed, petitioner quitclaimed his home and transferred the title of his truck to his own ULC chapter, thereby attempting to conceal the true ownership of these assets. Despite these conveyances, petitioner continued to make mortgage payments on his home and to use the home and truck as if he still owned them. Petitioner and his two witnesses testified, in sum, that they believed that a legitimate religious organization, via ULC, had been created to direct religious *583 services and to conduct religious counseling with an emphasis on prayer. Petitioner, a well-educated religious man who has been involved in religion throughout his life, would have us believe that he believed that the $ 5 payment, with resulting documentation from the ULC, would enable him to become a minister, thereby entitling him to tax-free treatment for his business activities as a psychologist and counselor. After careful consideration, we find that the testimony of petitioner and his witnesses, taken in full, is not credible in light of the surrounding circumstances appearing in the entire record. [2]
In 1981, petitioner filed a Petition for Voluntary Bankruptcy with the U.S. Bankruptcy Court for the Northern District of Utah. The secured creditors listed on Schedule A attached to the bankruptcy petition *584 were the Internal Revenue Service and the California Franchise Tax Board. The outstanding Federal tax liability listed by petitioner in his 1981 bankruptcy petition was that determined against petitioner in Tschudy v. Commissioner, T.C. Memo. 1979-459, for the 1975 taxable year, in the amount of $ 7,500. After the bankruptcy proceeding was complete, petitioner had been relieved of the $ 7,500 determined against him in Tschudy v. Commissioner, supra, $ 8,000 owed by him to the California Franchise Tax Board, and $ 25,135 of unsecured personal debt. Petitioner, in the same proceeding, did not list his home and his truck, now both "transferred" to his ULC chapter, on the property schedules which were part of his voluntary bankruptcy petition. Additionally, although petitioner did not file a tax return for the 1980 tax year, he indicated in his bankruptcy petition that he had filed a return for that year. In all, the bankruptcy petition is replete with inaccuracies and lies, and, with the benefit of hindsight, the proximity in time of petitioner's conduct in the bankruptcy matter to the fraud alleged for the tax years *585 here in issue is also indicative, albeit slightly, of petitioner's ongoing intent to fraudulently evade the payment of taxes. See Fed. R. Evid. 404(b) (evidence of other acts may be admissible to prove motive, opportunity, intent, preparation, plan, etc.); United States v. Luttrell, 612 F.2d 396, 397 (8th Cir. 1980); United States v. Johnson, 386 F.2d 630, 631 (3d Cir. 1967). During the course of the proceedings, although some documentation was provided by petitioner, petitioner failed to supply adequate books and records of activities, which would indicate receipts and expenses of the business conducted by FASA Institute, to the Internal Revenue Service (IRS). Although petitioner is an educated man, and despite his prior encounters with the IRS, petitioner did not consult with a tax professional in making his decision to stop filing income tax returns for the tax years subsequent to 1979. Finally, petitioner failed to make any estimated tax payments for the years in question. Discussion
Section 6653(b) provides for an addition to tax for fraud. In order to sustain her determination as to the fraud addition *586 to tax for a year, the Commissioner must prove, by clear and convincing evidence, that some part of the underpayment for that year is due to fraud with the intent to evade tax. Sec. 7454(a); Rule 142(b); Akland v. Commissioner, 767 F.2d 618, 621 (9th Cir. 1985), affg. T.C. Memo. 1983-249; Habersham-Bey v. Commissioner, 78 T.C. 304, 311 (1982); Doncaster v. Commissioner, 77 T.C. 334, 336 (1981). The Commissioner must show that the taxpayer intended to evade taxes by conduct calculated to conceal, mislead or otherwise prevent the collection of such taxes. Wedvik v. Commissioner, 87 T.C. 1458, 1468-1469 (1986); Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). Fraud will never be presumed. Beaver v. Commissioner, 55 T.C. 85, 92 (1970). Fraud may, however, be proven by reasonable inferences drawn from the facts and circumstantial evidence, because presentation of direct proof of a taxpayer's intent is seldom possible. Wedvik v. Commissioner, supra at 1469; *587 Rowlee v. Commissioner, supra at 1123. A taxpayer's entire course of conduct is examined to establish the requisite fraudulent intent. Recklitis v. Commissioner, 91 T.C. 874, 909-910 (1988). To meet her burden, the Commissioner must show that (1) there was an underpayment, and (2) the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes. Sec. 7454(a); Rule 142(b); Recklitis v. Commissioner, supra at 909. We find, in light of the parties' stipulations, that there was an underpayment of tax for each of the tax years in issue. We now turn to the element of petitioner's intent. Respondent argues that the facts in this case show, by clear and convincing evidence, that petitioner intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes. On the record before us, we find respondent's argument persuasive. The decision of the Court of Appeals for the Ninth Circuit in Bradford v. Commissioner, 796 F.2d 303 (9th Cir. 1986), *588 affg. T.C. Memo. 1984-601, is instructive in the appropriateness of inferring fraudulent intent from various kinds of circumstantial evidence, and sets forth a nonexclusive list of the "badges of fraud" that demonstrate fraudulent intent. These badges include: (1) The understatement of income, (2) the maintenance of inadequate books and records, (3) the concealment of assets, (4) implausible or inconsistent explanations of behavior, (5) a failure to file tax returns, and (6) a failure to cooperate with tax authorities. Id. at 307-308. In determining whether or not fraud exists, the Court may also look at evidence of prior and subsequent similar acts reasonably close to the years at issue. United States v. Johnson, 386 F.2d 630, 631 (3d Cir. 1967). A taxpayer's failure to file, standing alone, does not establish fraud. Recklitis v. Commissioner, supra at 910-911. When, however, the failure to file is coupled with other badges or circumstances that establish an intent to conceal or mislead, an inference of fraud is justified. Id. at 911; *589 Kotmair v. Commissioner, 86 T.C. 1253, 1260-1261 (1986), and cases cited therein. We have, therefore, examined the record to identify the presence or absence of other indicia of fraud. In light of the record taken as a whole and reasonable inferences therefrom, we now find that the facts in this case show, by clear and convincing evidence, that petitioner intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes. Petitioner's conduct in light of the following badges of fraud, as well as other factors taken from, and reasonably inferred from, the record as a whole, support this Court's finding: (1) Petitioner's failure to file tax returns, accompanied by his underpayment of tax; (2) petitioner's inadequate recordkeeping and failure to keep any proper business records; (3) petitioner's concealment of assets, as shown by the conveyances of petitioner's house and truck and continued use thereafter, also evident from the questionable circumstances surrounding petitioner's bankruptcy petition; (4) petitioner's concealment of income and the manner of use of such income; and (5) petitioner's *590 implausible explanation as to his belief concerning the establishment of his own ULC chapter in light of his religious and educational background, and the closeness in time of this conduct to his prior unsuccessful litigation experience with the Commissioner over the 1975 tax year wherein he refused to cooperate with the Government or produce any substantiation. Petitioner was aware of his obligation to file income tax returns and had filed such returns in earlier years. Petitioner contends, however, that, during the years in issue, he believed he could follow the instructions provided by the ULC in Modesto, California, and not file a return or report his income even though he had full control over the two Orange National accounts and spent the funds entirely for his own benefit. We have considered petitioner's testimony, as well as the other evidence of record, and conclude that petitioner knew he was not entitled to the claimed tax-exempt status but failed to file returns, thereby causing an underpayment of tax in each year, with the intent to evade tax. For these and other reasons, we find that petitioner is liable for the additions to tax pursuant to section 6653(b)(1) and *591 (2). Because we find that petitioner is liable for the additions to tax pursuant to section 6653(b)(1) and (2), we do not reach the issue of whether petitioner is liable for the additions to tax for negligence under section 6653(a)(1) and (2). We now turn to whether petitioner is liable for the addition to tax under section 6654(a) for failure to pay estimated tax for the 1982, 1983, and 1984 tax years. Petitioner failed to make any estimated tax payments for the years in question. Section 6654(a) provides for an addition to tax for failure to make the required estimated tax payments. Petitioner bears the burden of proof with respect to this matter. Rule 142(a). The provisions of section 6654(a) are mandatory absent a showing by petitioner that an exception applies. Recklitis v. Commissioner, supra at 913. Petitioner failed to adduce any evidence at trial with respect to this issue. Petitioner has thus failed to meet his burden, and, therefore, we find for respondent on this issue. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. Fifty percent of the interest due on the amount of the deficiencies attributable to fraud.↩
1. Petitioner received payments from the insurance companies for the services he rendered which were deposited into the two accounts maintained at the Orange National Bank. During the taxable years 1982, 1983, and 1984, deposits totaling $ 23,220, $ 18,920.31, and $ 22,460.40, respectively, were made into bank account No. XXX-XX5544. During the taxable years 1982, 1983, and 1984, deposits totaling $ 23,220, $ 18,920.31, and $ 22,460.40, respectively, were made into bank account No. XXX-XX5544 at Orange National Bank. During the taxable years 1982, 1983, and 1984, deposits totaling $ 22,717.95, $ 33,341, and $ 33,773.90, respectively, were made into bank account No. XXX-XX5579. During the taxable years 1982, 1983, and 1984, deposits totaling $ 22,717.95, $ 33,341, and $ 33,773.90, respectively, were made into bank account No. XXX-XX5579 at Orange National Bank. Account Nos. XXX-XX5544. Account Nos. XXX-XX5544 and XXX-XX5579 and XXX-XX5579 were in the name of ULC, Inc., d.b.a. FASA Institute, and ULC, Inc., Charter #29412, respectively.↩
2. We commend counsel for petitioner in this matter for his notable preparation and presentation of petitioner's case. Despite this, however, the overall circumstances mandate the finding we make herein.↩