MELVIN L. COCHRAN, D.D.S. INC., ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Melvin L. Cochran, D.D.S., Inc. v. Commissioner
Docket Nos. 21906-83; 16322-84; 21182-84; 6605-85; 6606-85; 6607-85; 6608-85.
United States Tax Court
T.C. Memo 1989-102; 1989 Tax Ct. Memo LEXIS 102; 56 T.C.M. (CCH) 1433; T.C.M. (RIA) 89102; March 14, 1989; As amended March 14, 1989 Joe Alfred Izen, Jr., for the petitioners. Paul Weisman, for the respondent. WRIGHT
MEMORANDUM FINDINGS OF FACT AND OPINION WRIGHT, Judge: By separate notices of deficiency dated February 29, 1984, and December 26, 1984, respondent determined deficiencies in petitioners Melvin and June Cochran's income tax and additions to tax for taxable years 1980 and 1981 as follows: Taxable Year
Deficiency
December 31, 1980
$ 29,478
December 31, 1981
56,613
*103 Additions to Tax
Taxable Year
Sec. 6653(a)(1) [2]
Sec. 6653(a)(2)
Sec. 6653(b)
December 31, 1980
$  -0- -0-
$ 14,739
December 31, 1981
2,831
50% of the
-0-
interest due
on $ 56,613
By answer and by amendments to answer, respondent determined an increased deficiency for taxable year 1980 in the amount of $ 11,504.96, requested damages under section 6673 for both taxable years and asserted additions to tax under section 6653(b) for taxable year 1981. By separate notices of deficiencies dated May 25, 1983, May 1, 1984 and December 26, 1984, respondent determined deficiencies in petitioner Melvin L. Cochran, D.D.S., Inc.'s income taxes for taxable years 1980, 1981 and 1982 in the following amounts; Taxable Year
Deficiency
March 31, 1980
$ 63,185
March 31, 1981
33,414
March 31, 1982
48,449
Additions to Tax
Taxable Year
Sec. 6653(a)(1)
Sec. 6653(a)(2)
Sec. 6653(b)
March 31, 1980
$    -0-  -0-
$  -0- March 31, 1981
-0-
-0-
16,707
March 31, 1982
2,422.45
50% of the -0-
interest due
on $ 48,449
*104 By amendments to answer, respondent increased the deficiency in the amount of $ 2,868.92 and requested additions to tax under section 6653(b) in the amount of $ 33,026.95 for taxable year 1980, determined additions to tax under section 6653(b) in the amount of $ 24,224.50 for taxable year 1982, determined additions to tax under section 6621(c), and requested an award of damages under section 6673 for all three taxable years. For taxable years 1980 and 1981, respondent determined additions to tax under section 6653(a)(1) and (a)(2) in the alternative to the additions to tax determined under section 6653(b). By separate notices of deficiency dated December 26, 1984, respondent determined deficiencies and additions to tax in the income tax of petitioners Apex Consulting Firm and Acme Services Company for taxable year ending December 31, 1981, in the following amounts: Additions to Tax
Petitioner
Deficiency
Sec. 6653(a)(1)
Sec. 6653(a)(2)
Apex Consulting
$ 27,899
$ 1,395
-0-
Acme Services
9,524
476
50% of the  interest due
on $ 9,524 By answer respondent determined additions to tax under section 6621(c) *105 for both petitioners in taxable year 1981. After numerous concessions by both parties, the remaining issues for our consideration are: (1) whether petitioner Melvin L. Cochran, D.D.S., Inc. (the corporation) properly claimed business expense deductions of $ 6,237, $ 13,495.65 and $ 6,108.51 for dental supplies in taxable years ending March 31, 1980, March 31, 1981, and March 31, 1982, respectively; (2) whether the corporation properly claimed net operating losses of $ 1,911 and $ 2,840 for taxable years ending March 31, 1981, and March 31, 1982, respectively; (3) whether the corporation is liable for additions to tax under section 6653(b) or, in the alternative, section 6653(a) for taxable years 1980, 1981 and 1982; and (4) whether petitioners Melvin and June Cochran are properly liable for an addition to tax under section 6653(b) for fraud for tax years 1980 and 1981 or, in the alternative, under section 6653(a) for negligent underpayment of tax for tax year 1981. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts, the second stipulation of facts, and the attached exhibits are incorporated herein by this reference. Petitioners *106 Melvin and June Cochran, cash basis taxpayers, are husband and wife and resided in Bakersfield, California, at the time of filing the petition herein. Melvin Cochran, a licensed dentist, incorporated the professional corporation, Melvin L. Cochran, D.D.S., Inc., on November 14, 1969. During the years in issue, the corporation's principal place of business was Bakersfield, California. Melvin Cochran is the sole shareholder and officer of the corporation. During all of the years in issue the income tax returns of all petitioners were prepared by Leon Meeks (Meeks), a certified public accountant. Melvin Cochran (hereafter referred to singularly as petitioner) had no experience or knowledge in business or tax law. Petitioners Acme Services Company (Acme) and Apex Consulting Firm (Apex) were two domestic trusts organized by petitioner under the direction of Karl Dahlstrom's American Law Association Plan (the ALA plan). Apex and Acme maintained their principal place of business at the address of the corporation. The ALA plan provided all the paperwork necessary to organize and operate four trusts, two domestic and two located in Belize, Central America, into a complex arrangement *107 of trustees and beneficiaries through which petitioner's income from dental services flowed in a series of allegedly nontaxable transactions culminating with a "gift" to petitioner of most of his salary. Although Karl Dahlstrom, the ALA plan's creator, has been criminally indicted, he had not been at the time petitioner became involved with the ALA plan. Petitioner checked the legitimacy of ALA with Meeks and another accountant as well as an attorney, Randolph Shipley. All three pronounced the plan legitimate before petitioner subscribed. The corporation rented dental equipment from Acme for rental cost determined by a dental equipment salesman who was not associated with ALA or the corporation. By the time of trial, both parties agreed that the ALA trusts should have no tax effect and be treated as nonexistent. Petitioner has been employed as a dentist since 1944. Commencing in the 1950's, petitioner operated a dental laboratory in which he made crowns and bridgework for himself and for other dentists. During this time he took courses in dental technology at local schools. After operating the laboratory for five years, petitioner sold it to Kent Hestley (Hestley), a dental *108 technician. Although petitioner continued to patronize Hestley's laboratory for his dental technical needs, he also supervised the preparation of his own bridgework and crowns for his patients which was performed by Michael Delliplaine (Delliplaine). Petitioner frequently purchased gold for dental casting and mixed his own fillings. Commencing in 1979, the corporation occasionally purchased casting gold and related metals from Marvin Goldstein (Goldstein), then doing business as Southeastern Coin Exchange (Southeastern Coin) and later as Omni Dental Supply Company (Omni Dental). Petitioner also purchased numismatic coins for collection and jewelry from Goldstein. In 1981, petitioner began using Krugerrands, a gold bullion coin issued by South Africa, in the metal alloy he used to make inlays and crowns for his patients. He bought his first Krugerrands from a coin collector's widow at a discount price and later bought them from Omni Dental. Petitioner and Delliplaine would melt one Krugerrand, four dimes and one penny (the Krugerrand alloy) to produce about one and a half ounces of the alloy that was used to make inlays and crowns. The silver in the dimes added strength and color *109 and the copper and zinc in the penny added strength. Then they would flux the molten metal to remove the oxides from the surface of the gold and cool it, breaking it into small ingots or buttons. Later, Delliplaine or Hestley would use these buttons to cast for fillings, inlays and crowns. Petitioner never used gold from jewelry or numismatic coins in the dental gold alloy, although the corporation did, on one occasion, purchase necklaces as gifts or bonuses for the office staff. Respondent's expert witness, Charles W. Westrick, Ph.D., the Supervisor of the Dental Professional Labs for the School of Dentistry at University of California at Los Angeles and a specialist in metallurgy, explained that making dental casting gold from Krugerrands is highly unusual. High quality commercial dental casting gold ordinarily contains gold, silver, copper, zinc, platinum, palladium and iridium. Petitioner melted the Krugerrand alloy with a blow torch. However, a blow torch could not be used to make an alloy with palladium or iridium useful for strengthening the alloy, because those elements have melting temperatures of 2829 degrees Fahrenheit and 4449 degrees Fahrenheit, respectively. *110 Dr. Westrick explained that areas of the mouth are characterized according to the amount of traumatic stress endured in each location from chewing, biting and grinding. A type three dental casting gold is the hardest casting gold and is appropriate for use in bridgework or for caps and inlays on teeth which bear considerable stress. A type three alloy must contain 75 percent gold, 11 percent silver, 9 percent copper, 3.5 percent palladium and 1.5 percent zinc. A type two alloy, designed to cover up to three sides of a tooth bearing minimum stress should include 77 percent gold, 13.5 percent silver, 7.5 percent copper, 1 percent palladium and 1 percent zinc. A type one alloy, suitable only for surface inlays, requires 81 percent gold, 10 percent silver, 8 percent copper, .5 percent palladium and .5 percent zinc. The Krugerrand alloy was only used for a type one or a type two casting because it was not as hard as the dental casting gold which was commercially available. Petitioner's Krugerrand alloy contained neither palladium nor iridium although the penny contributed zinc. Petitioner always purchased dental casting gold, usually from the Williams Gold Company (Williams gold), *111 from Omni Dental, for use in type three work. None of petitioner's patients whose dental work was made of the Krugerrand alloy complained about the taste or durability of their dental work. Dr. Westrick examined the sample of the Krugerrand alloy that petitioner brought to trial and pronounced it satisfactory and acceptable. During the years in issue, Goldstein had adopted the practice of misidentifying the goods shipped to dentists on their invoices to disguise shipments of various non-dental products. [3] The real commercial dental casting gold supplied by Omni Dental which came from Williams Gold Company was listed on invoices as "casting gold," "Williams Harmony Hard," "Williams Maxi Gold," "Williams X-Hard" or "49'er." Other real commercial dental casting gold was listed on Omni Dental's invoices as "casting gold." The misidentified gold was usually comprised of numismatic coins, jewelry or Rolex watches and was listed on invoices as "cast gold," a term Goldstein created. Although he did remember that petitioner never purchased a Rolex watch from him and once purchased gold necklaces, Goldstein could not remember what other shipments petitioner really received. The invoices *112 described the shipments only as "cast gold." The corporation did not purchase dental gold from any other source during 1980 and 1981. The corporation needed approximately 3 1/2 ounces of casting gold per month to make crowns, inlays and bridgework. In taxable years 1980, 1981 and 1982, petitioner remembered that the corporation purchased 71 ounces of regular commercial dental casting gold, 9 Krugerrands, and 2 Mapleleafs, a Canadian bullion coin. An invoice from Omni Dental for the taxable year ending March 31, 1980, shows that the corporation purchased commercial dental casting gold for $ 6,237.00 on December 3, 1979. [4] Invoices from Omni Dental for the taxable year ending March 31, 1981, show that the corporation purchased shipments of commercial dental casting gold for $ 1,525.20 and $ 2,869 on April 8, 1980, and February 9, 1981, respectively, and other shipments of "cast gold" for $ 1,044 on April 8, 1980, for $ 787.40 on August 29, 1980, for $ 5,760 on September 2, 1980, and for $ 2,999.25 on March 29, 1981. In the taxable year ending March 31, 1982, the corporation *113 purchased a shipment of commercial dental casting gold for $ 6,602.50 on October 12, 1981, and purchased a shipment of "cast gold" for $ 2,715.51 on June 9, 1981. There were shipping charges of $ 46 in 1980 and $ 12 in 1981. The shipment of September 9, 1980, contained two Mapleleaf coins, which were identified as "dwt 24 KAU." The final invoice of 1981 identified the shipment as seven Krugerrands. [5]
OPINION The first issue for our consideration is whether the corporation properly claimed deductions for business expenses associated with the purchase of gold for dental casting. Section 162 allows a deduction for reasonable business expenses which are both ordinary and necessary. Deductible business expenses include "ordinary and necessary *114 expenditures directly connected with or pertaining to the taxpayer's trade or business." Sec. 1.162-1(a), Income Tax Regs. Whether an expense is ordinary and necessary is a question of fact. Commissioner v. Heininger,320 U.S. 467, 475 (1943); Walliser v. Commissioner,72 T.C. 433, 437 (1979). "Ordinary" has been interpreted to mean that an expense must bear a reasonably proximate relationship to the operation of the taxpayer's trade or business. Deputy v. du Pont,308 U.S. 488, 495-496 (1940); Challenge Manufacturing Co. v. Commissioner,37 T.C. 650, 660 (1962). "Necessary" has been interpreted to mean that the expense must be "appropriate" or "helpful" to the taxpayer's trade or business. Commissioner v. Heininger, supra at 471; Carbine v. Commissioner, 83 T.C . 356, 363 (1984), affd. 777 F.2d 662 (11th Cir. 1985). Where an expenditure is, by its nature, ordinary and necessary, but is unreasonable in amount, only the reasonable portion qualifies for a deduction under section 162. United States v. Haskel Engineering & Supply Co.,380 F.2d 786, 788-789 (9th Cir. 1967). *115 Petitioners claim that the gold purchased from Omni Dental was used to manufacture dental castings such as bridgework, inlays, fillings and crowns. Petitioners maintain that the purchased bullion coins were melted to produce casting gold of sufficient strength that it could be used as type two or type one dental gold. The burden of proving that such deductions are warranted rests with petitioners. Welch v. Helvering,290 U.S. 111, 115 (1933); Rule 142(a). However, because respondent increased the deficiency for taxable year ending March 31, 1980, by $ 2,868.92 respondent bears the burden of proving that amount . Rule 142(a). Furthermore, deductions are a matter of legislative grace and each statutory requirement must be satisfied before the deduction can be allowed. New Colonial Ice Co. v. Helvering,292 U.S. 435 (1934). Respondent maintains that the formula described by petitioners as one Krugerrand, four dimes and a penny would be unsuitable for a dental casting gold alloy. Because the alloy thus created would not comply with industry standards, respondent asserts, petitioner would not have used it for his patients. To support this contention, *116 respondent relies on Dr. Westrick's report and testimony that a type three alloy could only be made with palladium and iridium which could not be incorporated into petitioner's alloy. However, we understood Dr. Westrick to say that because type one and type two alloys do not have to be as hard as a type three alloy, they did not have to contain platinum, palladium and iridium, although the commercial casting golds generally do. Petitioner stated that he only used his Krugerrand alloy where a type one or type two alloy would have been suitable. Dr. Westrick was aware that Krugerrands and other non-numismatic gold coins were used by dentists to make dental gold. Dr. Westrick explained that tarnish and corrosion would not occur with the Krugerrand alloy and that the only deficiency would be a lack of longevity and strength if used as a type three alloy. While Dr. Westrick may have declined to use such homemade concoctions in his own practice, the entire record manifests that petitioner did actually use the Krugerrand alloy and with unmitigated success. [6] We conclude, therefore, that the corporation did purchase Krugerrands and Mapleleaf coins during the years in issue which were ultimately *117 melted down and used in dental castings. Thus, the cost of such coins was ordinary and necessary to the corporation's business. The sole evidence petitioner introduced to show how much gold was purchased during the years in issue consisted of the invoices from Omni Dental. Unfortunately, those invoices are incorrect and deliberately misleading, and we must determine the amounts of bullion coins that the corporation actually purchased to make dental casting gold. Goldstein testified that he distinguished between real casting gold and other gold by listing real dental casting gold as "casting gold" while describing other gold as "cast gold" on the invoices. [7] The invoices also identified the real casting gold, some of which was ordered from Williams Gold Company, in the total amounts of $ 6,237, $ 4,394.20 and $ 6,602.50 for taxable years 1980, 1981 and 1982, respectively. Thus, the only amounts on the invoices whose identity must be discerned are purchases for $ 1,044 in April 1980, *118 $ 787.40 in August 1980, $ 2,999.25 in March 1981, $ 2,715.51 in June 1981, and $ 3,381 in October 1981. Goldstein testified that the seven units of KR gold alloy purchased on October 12, 1981, were actually 7 Krugerrands and that the 40 units of dwt 24 KAU purchased on September 2, 1980, were 2 Mapleleafs. Although petitioner remembered purchasing 9 Krugerrands we can find evidence of only 7. We conclude that these invoice amounts, of $ 3,381 and $ 1,358, respectively, are the only expenses which petitioner has established as deductible. Furthermore, petitioner is entitled to deductions for shipping costs associated with the commercial dental casting gold in the amount of $ 16.26 in taxable year 1981 only. The allocation of the remainder of the costs cannot be determined and are thus not deductible. Respondent has met his burden of proving that the claimed deductions were improperly taken. *119 The second issue for our consideration is whether the corporation is entitled to claim deductions for net operating losses in the amounts of $ 1,911 and $ 2,840 for taxable years 1981 and 1982, respectively. Neither party introduced any evidence concerning these deductions and petitioner indicated on brief that he believed this issue had been settled prior to trial. Petitioner has the burden of proving that he is entitled to claim this deduction. Rule 142(a). Because petitioner has failed to meet this burden of proof we conclude that he is not entitled to a deduction for a net operating loss for taxable years 1981 and 1982. The third issue for our consideration is whether the corporation is liable for additions to tax under section 6653(b) for fraudulent underpayments in tax or, in the alternative, for additions to tax under section 6653(a) for negligent or intentional disregard of the rules and regulations. The burden of proving that some part of the underpayment in tax for each of the years in issue was attributable to fraud rests with respondent. Hebrank v. Commissioner,81 T.C. 640, 642 (1983); Rule 142(b). Respondent contends that the corporation's *120 deductions claimed for the payments made to Omni Dental for "cast gold" manifest fraudulent intent because the payments were really for petitioner's personal items. Furthermore, respondent maintains that the corporation's involvement with the ALA plan was an effort to fraudulently evade taxes. We conclude that respondent has failed to meet his burden. The issue of fraud presents a factual question which must be decided on the basis of an examination of all the evidence in the record. Plunkett v. Commissioner,465 F.2d 299, 303 (7th Cir. 1972), affg. a Memorandum Opinion of this Court; Stone v. Commissioner,56 T.C. 213, 224 (1971); Stratton v. Commissioner,54 T.C. 255, 284 (1970). Fraud is never presumed but must be established by some independent evidence of fraudulent intent. Beaver v. Commissioner,55 T.C. 85 (1970). Fraud may be proven by circumstantial evidence and reasonable inferences drawn from the record because direct proof of the taxpayer's intent is rarely available. Spies v. United States,317 U.S. 492 (1943); Rowlee v. Commissioner,80 T.C. 1111 (1983); Stephenson v. Commissioner,79 T.C. 995 (1982), *121 affd. 748 F.2d 331 (6th Cir. 1984). Since the corporation is an artificial entity, it can only act through its officers, employees or agents whose wrongful acts can be imputed to the corporation. Federbush v. Commissioner,34 T.C. 740 (1960), affd. 325 F.2d 1 (2d Cir. 1963); Ace Tool & Engineering, Inc. v. Commissioner,22 T.C. 833, 843 (1954). Fraud is defined as an intentional wrongdoing designed to evade tax believed to be owing, effectuated by conduct intended to conceal, mislead or otherwise prevent the collection of such tax. Stoltzfus v. United States,398 F.2d 1002 (3d Cir. 1968), cert. denied 393 U.S. 1020 (1969); Wedvik v. Commissioner,87 T.C. 1458, 1468-1469 (1986); Estate of Pittard v. Commissioner,69 T.C. 391 (1977). Fraud may be inferred from consistent underreporting of income, Otsuki v. Commissioner,53 T.C. 96 (1969), or where the taxpayer makes false and inconsistent statements to revenue agents, Grosshandler v. Commissioner,75 T.C. 1, 20 (1980), or files false documents. Stephenson v. Commissioner, supra. *122 Similarly, understated income, inadequate records, implausible or irreconcilable explanations, concealment of assets and failure to cooperate with tax authorities are all indicia of fraud. Bradford v. Commissioner,796 F.2d 303 (9th Cir. 1986), affg. a Memorandum Opinion of this Court. We cannot conclude that the corporation's purchases of gold from Omni Dental were fraudulent. A substantial portion of the claimed expenses were attributable to commercial dental casting gold and for Krugerrands and Mapleleafs. Petitioner's testimony concerning his use for the bullion coins was credible and does not manifest a fraudulent motive. The portion of the claimed deductions which cannot be allowed is attributable primarily to Omni Dental's disreputable business practices and the corporation's failure to supply its own books and records. Respondent has failed to show that the corporation's purchases were really for petitioner's personal use. Respondent also seeks to prove fraudulent intent in the corporation's involvement in the ALA plan. While both parties agree that the ALA trusts do not now have and never did have tax effect, we cannot conclude that at the time *123 of subscribing to the ALA plan, petitioner was motivated by a fraudulent intent to evade taxes. He consulted with two certified public accountants and spoke to an attorney prior to subscribing. He was careful to comply with all the requirements detailed in the plan and scrupulously filed tax returns. He was open and helpful with revenue agents. In short, his participation in the ALA plan cannot serve as the foundation for fraud. Respondent relies heavily on our case Akland v. Commissioner,T.C. Memo. 1983-249, affd. 767 F.2d 618 (9th Cir. 1985), in which we held the taxpayer's involvement with ALA trusts was motivated by fraudulent intent to evade taxes. However, each case must stand on its own facts. Furthermore, in Akland the taxpayers made efforts to conceal their activity and never consulted tax professionals about the legitimacy of the ALA plan. By contrast, petitioner's own accountant, as well as another accountant and an attorney, assured him that the ALA plan was legal. While petitioner's actions were ill-conceived and careless, these factors undermine a finding of fraud. If we conclude that the corporation did not have fraudulent *124 intent, respondent urges us to find that it was negligent. Section 6653(a) provides for an addition to tax if any part of the underpayment is due to negligence. Negligence is defined as the lack of due care or the failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Marcello v. Commissioner,380 F.2d 499, 506 (5th Cir. 1967), cert. denied 389 U.S. 1044 (1968); Neely v. Commissioner,85 T.C. 934, 947 (1985). Petitioners bear the burden of proving that they were not negligent for taxable year ending March 31, 1982. Bixby v. Commissioner,58 T.C. 757 (1972); Enoch v. Commissioner,57 T.C. 781 (1972). Because respondent asserted additions to tax for taxable years ending March 31, 1980, and March 31, 1981, for the first time in an amendment to the answer, he bears the burden of proof for those years. Rule 142(a). We conclude that petitioner's precautions were sufficient to preclude a finding of negligence because we find that a reasonable person would have believed that the ALA plan offered an opportunity for legitimate tax savings. The plan consisted of four *125 shell trusts which purported to provide services to each other and then compensate each other, allowing petitioner to receive his salary through allegedly nontaxable channels. However, petitioner consulted tax advisors who were unaffiliated with ALA and who assured him the plan was genuine and legitimate. A reasonable and ordinarily prudent person would have relied on the advice of disinterested counselors. However, we conclude that the corporation was negligent in failing to maintain its own books and records to supplement the invoices provided by Omni Dental, a company whose practices were admittedly dishonest. Because so many dentists availed themselves of Omni Dental's creative record keeping petitioner must have known that the invoices were misleading. Since the invoices were useless, the corporation was left without any documentation to substantiate its claimed deductions. Such behavior was not reasonable especially where, as here, the corporation had a legitimate business use for at least some of the products which Omni Dental shipped and had reason to believe that accurately established expenses would be valid deductions. Thus, we conclude that respondent has met his *126 burden of establishing negligence for tax years 1980 and 1981 and that petitioners have failed to meet their burden with respect to tax year 1982. The fourth and final issue for our consideration is whether petitioners Melvin and June Cochran are liable for additions to tax under section 6653(b) for fraud, or, in the alternative, under section 6653(a) for negligence. For the reasons discussed above we conclude that respondent has failed to show that petitioners are liable for fraud but petitioners have not proven that they are not liable for additions to tax for negligence. In light of the foregoing, Decisions will be entered under Rule 155.
Footnotes
1. Cases of the following petitioners are consolidated herewith: Melvin L. Cochran and June Cochran, docket Nos. 16322-84, 6605-85; Apex Consulting Firm, docket No. 6606-85; Acme Services Company, docket No. 6607-85.↩
2. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
3. Goldstein estimated that almost 85 percent of the dentists he supplied wanted disguised invoices.↩
4. There was also an invoice showing that on July 23, 1979, the corporation purchased $ 35,000 in United States twenty dollar coins for its defined benefit plan. However, neither party pursued this issue and we decline to exhume it here. ↩
5. Goldstein' practice of misidentifying shipments of gold came to the attention of agents from the Internal Revenue Service in 1981 and Goldstein was urged to adopt more straightforward descriptions.↩
6. As we noted in Delaney v. Commissioner,T.C. Memo. 1982-666, affd. 743 F.2d 670↩ (9th Cir. 1984), some dentists do use Krugerrands in a dental casting gold alloy.
7. Goldstein also stated that all orders of real dental casting gold were listed in amounts ending with zero, twenty-five, fifty or seventy-five cents. Thus, an amount ending with another number could not have been real dental casting gold. However, one of the shipments of Williams gold was listed at $ 355.60 casting doubt on the utility of this criterion.↩