PETER F. SPENCER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Spencer v. Commissioner
Docket No. 8049-92
United States Tax Court
T.C. Memo 1994-531; 1994 Tax Ct. Memo LEXIS 539; 68 T.C.M. (CCH) 1010; October 20, 1994, Filed *539 Decision will be entered under Rule 155. Peter F. Spencer, pro se. For respondent: Stephen R. Asmussen and Michael F. Steiner. PARR
PARR
MEMORANDUM FINDINGS OF FACT AND OPINION PARR, Judge: Respondent determined deficiencies in and additions to petitioner's Federal income taxes as follows: Additions to Tax
Sec. Sec. Sec.
Sec.
Sec.
Year
Deficiency
6651(f)
6653(b)(1)
6653(b)(1)(A)
6653(b)(1)(B)
6654
1986
$ 49,584
--
--
$ 37,188
[1]
$ 2,398
1987
30,539
--
--
22,904
[1]
1,650
1988
26,296
--
$ 19,722
--
--
1,682
1989
33,053
$ 24,790
--
--
--
2,238
1990
41,305
30,979
--
--
--
2,721
By amendment to answer respondent has alternatively asserted additions to tax for negligence under section 6653(a) for 1986 through 1988 and section 6662 for 1989 and 1990. Respondent has also alternatively asserted additions to tax for failure to file under section 6651(a) for 1986 through 1990. All section references are to the Internal Revenue Code in effect for the taxable years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, *540 unless otherwise indicated. After mutual concessions, the issues remaining for decision are whether income reported by trusts established by petitioner is attributable to him individually, and whether he is liable for any additions to tax. [1]
*541 FINDINGS OF FACT Some of the facts are stipulated, and the stipulations are incorporated herein by reference. When petitioner filed his petition in this case, he resided in Byron, California. Petitioner did not file a Form 1040, Individual Income Tax Return, for any of the years at issue in this case. He did file Forms 1041, Fiduciary Income Tax Returns for Eaton Trust Co., Ltd., for the years 1986 through 1990. Petitioner also filed Forms 1041, Fiduciary Income Tax Returns for the Oxford Charter Group for tax years 1986, 1987, 1989, and 1990. Durring the years at issue, petitioner was an electromagnetic engineering consultant. He received gross income from a business he named EMI Consultants as follows: 1986
1987
1988
1989
1990
$ 59,963
$ 52,300
$ 52,018
$ 56,960
$ 34,629
Petitioner had miscellaneous other income/loss as follows: 1986
1987
1988
1989
1990
$ 382
($ 546)
$ 104
$ 55
$ 1,604
Petitioner received Social Security income as follows for tax years 1988 through 1990: 1988
1989
1990
$ 2,364
$ 9,828
$ 10,292
Petitioner did not report or pay self-employment taxes. During the years in issue, petitioner was not *542 married. He had been married to Carolee Spencer from February 1978 through August 1983, when they divorced. During those years they filed joint Federal individual income tax returns. Petitioner has a bachelor of science degree in electrical engineering from Heald's College, where he graduated after studying the first 2 years at the University of Santa Clara. In 1985 petitioner was fully employed by Stanford Applied Engineering Co. He wanted to set up a consulting company to do test work for Stanford and other companies that manufactured engine generators and similar devices. In 1985 petitioner established the EMI Consultants Co. trust (EMI) and the Delta Investment and Leasing Co. trust (Delta). The trusts are based in the Turks and Caicos Islands, British West Indies. An attachment to the trust documents advises: Schedules A and B should show the assets exchanged for the Certificates. It is a good idea to include a large personal note from yourself to the Company so you will have a means of putting funds in after the initial exchange. You may deduct the interest on the note from personal taxes if you actually pay interest to the Company. PLEASE NOTE: You should *543 never show the Company Contracts to the I.R.S. without first contacting the proper Trustee Company. The Trustee is the one who would deal with the I.R.S. regarding trust documents, taxes, and other inquiries. You are required only to present your side of each transaction, meaning what you personally put into or what you received back. (Receipts, Certificates, etc.).
Petitioner did not seek the advice of an independent attorney or other type of tax expert before he entered into the trusts. Petitioner does not know whether his "advisers" were lawyers or accountants or had other credentials. Although petitioner used an independent accountant, Mark Rodrigs, to prepare his income tax returns before and during the years in issue, he did not consult him about the viability of the trusts, "or he may have advised against it. I don't know." Petitioner operated his consulting business through EMI. Colonial Heritage assisted petitioner in the organization of EMI in 1985. The Oxford Charter Group became the trustee for EMI in 1987. Nassau Life Insurance Co. assisted petitioner in the organization of Delta. During the years at issue, Eaton Trust Co., Ltd., was the trustee for Delta. *544 Petitioner owned a condominium before he organized Delta. In or about 1985, petitioner transferred title of the condominium to Delta. Petitioner lived in the condominium until it was sold in January 1990, when he moved into a motor home where he continues to live. The condominium was sold with a resulting capital gain of $ 15,798. The parties dispute whether the capital gain is taxable to Delta or to petitioner. Respondent concedes that, other than the gain on the condominium, there is no gross business income attributable to petitioner arising from Delta. Petitioner personally managed the business operations of EMI and Delta. He had full authority to possess and control the assets of Eaton Trust Co., Ltd., Oxford Charter Group, Delta, and EMI, subject to limitations set by the trust instrument. Petitioner and his ex-wife, Carolee Spencer, were the only persons authorized to sign checks on the bank accounts for Eaton Trust Co., Ltd., Oxford Charter Group, Delta, and EMI. These entities had no employees, but did use contract labor. Petitioner signed the Forms 1041 for Eaton Trust Co., Ltd., and Oxford Charter Group and was responsible for filing those returns. Petitioner *545 caused Carolee Spencer to be a cosigner on the EMI and Delta trust checking accounts from 1986 through 1990, in order to give her access to money for child support and to pay for auto insurance or other specific expenses. [2] Petitioner provided Carolee with money for his stepchildren from 1985 through 1991, in amounts ranging from $ 650 to $ 800 a month. Petitioner also occasionally purchased clothing for Carolee from the EMI account. Carolee wrote most of the checks for the business. Petitioner caused the trust to deduct payments from the business checking account to Carolee as "contract labor". Carolee occasionally wrote a letter for petitioner and organized his receipts, canceled checks, and deposit receipts for the accountant's use. This saved petitioner $ 600 to $ 700 per year. However, both petitioner and Carolee considered money paid to Carolee to be child support. Petitioner *546 paid Edna Schmidt for bookkeeping services. Although Edna Schmidt was petitioner's first wife, she continued to keep his books after their divorce and during his subsequent marriage to Carolee. It appears the amounts paid her were actually for bookkeeping services. Petitioner had the power to dispose of the trust assets as he wished. The motor home, which he purchased and in which he lived, was owned by Delta. Petitioner later gave the motor home to his stepson Sean. Petitioner purchased a houseboat with trust assets which he lived on for approximately 3 months when the motor home was being repaired. He gave a small vehicle, also owned by Delta, to his stepson Jason. Petitioner did not seek or obtain permission of the trustees before making those gifts. Prior to 1985 petitioner reported all income on personal individual returns. After the formation of the trusts, he revalued the equipment he had been depreciating as an individual using the then-estimated fair market value. The trust then took depreciation deductions on those same assets using the revised valuation as the depreciable basis. The parties have stipulated the depreciation issue. Mr. Rodrigs prepared individual *547 Federal income tax returns for petitioner prior to the years in issue and the fiduciary returns prepared during the years in issue. Petitioner did not call Mr. Rodrigs as a witness. Petitioner paid the trustees $ 350 per trust per year, for which they provided virtually no services. Petitioner was in charge of running the business. The purported trustee did not have access to the checking account nor possession of trust assets. Although the "trustee", a Mr. B.L. Holdtzower, responded to a revenue agent's letter requesting an examination, he did not appear or otherwise submit documents for Delta. Petitioner is in fact the person who signed Delta's tax returns. Petitioner is the person who handled the audit with the agent. In response to the agent's request for the number, name, address, and taxpayer identification of all clients or lessees during 1988 through 1990, petitioner stated they were "lost in transit." In response to the agent's summons to Bank of America, respondent received bank records for EMI and Delta, but was advised that Peter Spencer individually did not have an account. Carolee Spencer used only the business account and did not know of a personal account. *548 Apparently, petitioner did not keep a personal account during the years in issue. OPINION As to the deficiency, petitioner bears the burden of proving respondent's determinations are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). The amounts of income and deductions have been resolved by stipulation. Petitioner's liability will turn on whether the trusts are shams. Petitioner presented no credible evidence to persuade us that the trusts were established for any reason other than tax avoidance. We find that they are shams and that the income reported by the trusts is attributable to petitioner. The evidence shows that petitioner dealt with the trust property as his own. He continued to live exactly as before in the condominium he transferred to the trust. He did not consult the trustees with regard to buying, selling, or giving away trust property. He paid personal expenses from the trust bank accounts, and apparently did not even have a personal checking account during the years in issue. Moreover, the "trustees" had no discernible duties. Petitioner prepared and signed the trust returns. Except for one letter from a *549 purported trustee (which we regard as window dressing), petitioner dealt personally (or refused to deal) with respondent. The purported trustees did not have access to trust bank accounts or any other property of the trusts. We conclude that the trusts were a fiction. Where a trust has no economic substance apart from tax considerations, the trust is not recognized for Federal tax purposes. Zmuda v. Commissioner, 731 F.2d 1417 (9th Cir. 1984), affg. 79 T.C. 714 (1982); Markosian v. Commissioner, 73 T.C. 1235, 1245 (1980); Furman v. Commissioner, 45 T.C. 360, 364 (1966), affd. per curiam 381 F.2d 22 (5th Cir. 1967). [3]
We thus hold that the trusts will be disregarded for Federal tax purposes, and all income and deductions therefrom are attributed to petitioner. Further, because *550 they serve no business purpose, petitioner is not entitled to deduct trust fees paid. Since the income from EMI is attributed to petitioner, it follows that he is liable for self-employment taxes. The amount of petitioner's liability will be resolved in a Rule 155 computation. Additions for Fraud and Fraudulent Failure to File
Respondent determined in the notices of deficiency that petitioner is liable for the additions to tax for fraud under section 6653(b)(1)(A) and (B) for 1986 and 1987 and section 6653(b)(1) for 1988. [4] *551 For tax returns due after December 31, 1989, the fraud penalty does not apply where, as here, the taxpayer has not filed a return. Sec. 6664(b); Caplette v. Commissioner, T.C. Memo. 1994-403. However, section 6651(f)[5] provides an addition to tax when the failure to file is due to fraud. Thus, respondent asserted that petitioner is liable for an addition to tax for fraudulent failure to file for 1989 and 1990. Respondent must prove by clear and convincing evidence the two elements of fraud: (1) The existence of an underpayment of tax each year, and (2) that some part of the underpayment is due to fraud. Hebrank v. Commissioner, 81 T.C. 640, 642 (1983); Mosteller v. Commissioner, T.C. Memo. 1986-505, affd. without published opinion 841 F.2d 1123 (4th Cir. 1988). Respondent cannot meet her burden of establishing the existence of an underpayment on the basis of petitioner's failure to meet his burden of proving error in the determination of deficiencies. Drieborg v. Commissioner, 225 F.2d 216, 218 (6th Cir. 1955), affg. in part and revg. in part a Memorandum Opinion of this Court; Estate of Beck v. Commissioner, 56 T.C. 297, 363 (1971). *552 Respondent bears the burden of proof and must establish each element of fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b); Akland v. Commissioner, 767 F.2d 618, 621 (9th Cir. 1985), affg. T.C. Memo. 1983-249. Respondent must prove fraud in each of the years involved. Drieborg v. Commissioner, supra at 220. Fraud is actual, intentional wrongdoing, with the specific purpose to evade a tax believed to be owing. Bradford v. Commissioner, 796 F.2d 303 (9th Cir. 1986), affg. T.C. Memo. 1984-601; Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968); Webb v. Commissioner, 394 F.2d 366, 377 (5th Cir. 1968), affg. T.C. Memo. 1966-81. Respondent must show that petitioner intended to evade taxes by conduct calculated to conceal, mislead, or otherwise prevent the collection of the tax. Stoltzfus v. United States, supra at 1004; Webb v. Commissioner, supra at 377. *553 Fraud is never to be presumed. Toussaint v. Commissioner, 743 F.2d 309, 312 (5th Cir. 1984), affg. T.C. Memo. 1984-25; Webb v. Commissioner, supra at 377. The existence of fraud is a question of fact to be determined on the basis of the entire record. Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud, however, can seldom be proved by direct proof of the taxpayer's intention. Fraud can be established by circumstantial evidence and by reasonable inferences drawn from the taxpayer's entire course of conduct. Spies v. United States, 317 U.S. 492, 499 (1943); Toussaint v. Commissioner, supra at 312; Gajewski v. Commissioner, supra at 200. Courts frequently list various factors or "badges of fraud" from which fraudulent intent may be inferred. Recklitis v. Commissioner, 91 T.C. 874, 909 (1988). Although such lists are nonexclusive, *554 some of the factors this Court has considered as indicative of fraud are understatement of income, inadequate records, failure to file tax returns, implausible or inconsistent explanations of behavior, concealment of assets, and failure to cooperate with the tax authorities. Niedringhaus v. Commissioner, 99 T.C. 202, 211 (1992) (citing Bradford v. Commissioner, 796 F.2d 303, 307-308 (9th Cir. 1986), affg. T.C. Memo. 1984-601). The sophistication, education, and intelligence of the taxpayer are also relevant. Halle v. Commissioner, 175 F.2d 500, 503 (2d Cir. 1949), affg. 7 T.C. 245 (1946); Niedringhaus v. Commissioner, supra at 202. Although the matter is not free from doubt, we decline to find fraud under the circumstances of this case. While petitioner did not file individual Federal income tax returns during the years in issue, he did file trust returns, reporting the income from his consulting business. He apparently did not attempt to hide assets, nor did he deal in large sums of cash. During *555 audit, petitioner was less than forthcoming with respondent, but he did keep sufficient records to permit the parties to stipulate gross income and thousands of dollars of legitimate business expenses over the 5-year period in issue. We are troubled by petitioner's deduction of personal expenses, particularly payments to Carolee Spencer intended as child support; however, even there, Ms. Spencer did provide some accounting and secretarial services to petitioner. While it is a close call, we hold that respondent has not proven fraud by clear and convincing evidence. Additions to Tax for Negligence and Failure To File
Respondent has alternatively asserted additions to tax for negligence under sections 6653(a) for 1986 through 1988 and section 6662 for 1989 and 1990. Respondent has also alternatively asserted additions to tax for failure to file under section 6651(a) for 1986 through 1990. Because the alternative additions to tax were raised for the first time in respondent's amendment to answer, respondent bears the burden of proof on those issues. Rule 142(a). Section 6653(a) imposes an addition to tax for negligence or intentional disregard of rules or regulations. *556 Negligence is the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Section 6662(a) requires that a penalty in an amount equal to 20 percent of any portion of an underpayment to which section 6662 applies be added to the tax. Section 6662(b)(1) states that section 6662 applies to any underpayment which is attributable to negligence or disregard of rules or regulations. Section 6662(c) defines negligence as any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code and defines disregard as any careless, reckless, or intentional disregard. Section 6651(a)(1) imposes an addition to tax for failure to timely file a return, unless the taxpayer establishes: (1) The failure did not result from willful neglect, and (2) the failure was due to reasonable cause. Willful neglect has been interpreted to mean a conscious, intentional failure, or reckless indifference. United States v. Boyle, 469 U.S. 241, 245-246 (1985). Reasonable cause requires the taxpayer to demonstrate *557 that he or she exercised ordinary business care and prudence and was nonetheless unable to file a return on time. Petitioner has merely stated that he trusted his advisers and believed in good faith that the trusts were a way to maximize his estate. However, petitioner's reliance was not only misplaced; it was unreasonable. Petitioner did not investigate the qualifications of his advisers, and does not know yet whether they were certified accountants or attorneys. He failed to consult any outside adviser, including his own accountant, because "he may have advised against it." Petitioner did not call the "trustees", "advisers", or his accountant to testify. We infer that such testimony would not have been helpful to petitioner. Moreover, it was not reasonable for petitioner to believe he could legitimately save large amounts of tax, without any change in the use or treatment of his previously personal property and business, merely by the use of an offshore trust. In light of the above, we find petitioner was intentionally negligent or recklessly indifferent to rules and regulations, and is liable for the additions to tax for negligence and failure to file. Addition for Failure *558 To Pay Estimated Income Tax
Respondent determined in the notice of deficiency that petitioner is liable for additions to income tax for each of the years in issue for failure to pay estimated tax pursuant to section 6654. Petitioner has not met his burden of proving respondent's determination is erroneous. Therefore, respondent's determination is sustained. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. 50 percent of the interest due on the entirety of the deficiency.↩
1. The parties agree the petitioner is allowed itemized deductions for mortgage interest and real estate taxes paid by petitioner on his condominium as follows: 1986
1987
1988
1989
1990
Interest
$ 8,272
$ 8,774
$ 7,860
$ 8,032
--
Taxes
1,218
--
--
--
--
Petitioner is entitled to a long-term capital loss in 1987 from the worthlessness of his Nassau Life Insurance Co. stock in the amount of $ 12,000. Petitioner concedes he is not entitled to a capital loss in the amount of $ 10,000 in 1990 incurred as a result of the trustee investment's becoming worthless. In addition, respondent orally conceded that petitioner is entitled to total business expenses, from both Delta Investment Co. trust and EMI Consultants Co. trust, including depreciation, as follows: $ 1986 -- $ 24,861; 1987 -- $ 21,249; 1988 -- $ 21,388; 1989 -- $ 17,649; 1990 -- $ 13,047. Respondent also conceded that petitioner is entitled to calculate his returns as a single person, rather than married filing separately as determined in the notice of deficiency.↩
2. Petitioner was not required by a court order or decree to pay child support, but apparently had a good rapport with his stepchildren.↩
3. See also Trenerry v. Commissioner, T.C. Memo. 1994-500↩.
4. For tax years 1986 through 1988, the fraud addition to tax is 75 percent of the underpayment. See secs. 6653(b)(1)(A)↩ for 1986 and 1987 and 6653(b)(1) for 1988.
5. Sec. 6651(f)↩ states that if failure to file any return is fraudulent, the taxpayer is liable for an addition to tax of 15 percent per month (not exceeding 75 percent in the aggregate) of the amount of tax required to be shown on the return.