THOMAS MICHAEL KERR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kerr v. Commissioner
Docket No. 1094-91
United States Tax Court
T.C. Memo 1994-582; 1994 Tax Ct. Memo LEXIS 590; 68 T.C.M. (CCH) 1267; November 30, 1994, Filed *590 Decision will be entered for respondent. Thomas Michael Kerr, pro se. For respondent: Fred E. Green, Jr.
FAY
FAY
MEMORANDUM OPINION FAY, Judge: Respondent determined deficiencies in and additions to petitioner's income tax as follows: Additions to Tax Sec.
Sec. Year
Deficiency
6653(b) 6654 1977
$ 48,110
$ 24,055
-- 1978
5,901
2,950
$ 188
1979
854
427
34
1980
5,730
2,865
-- 1981
3,930
1,965
301
1982
5,368
2,684
154
All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated. Petitioner did not file individual income tax returns for the taxable years 1978 through 1982. [1] Respondent, by use of Forms W-2 submitted by petitioner's various employers during the years at issue, determined that petitioner received gross income from his various jobs in the amounts of $ 22,879, $ 8,667, $ 23,435, $ 19,338, and $ 23,976 for the taxable years 1978, 1979, 1980, 1981, and 1982, respectively. Petitioner, in his answer to respondent's request for admissions, initially admitted to having received the income at *591 issue. Just prior to trial, however, petitioner, while asserting tax protester objections, refused to sign the proposed stipulation of facts prepared by respondent embodying many of petitioner's previous admissions. Rather, petitioner now challenges his receipt of certain income for the years at issue. The issues for decision, therefore, are: (1) Whether petitioner filed income tax returns for the taxable years 1978 through 1982. We hold that he did not. (2) Whether petitioner had income as determined by respondent for the taxable years 1978 through 1982. We hold that he did. (3) Whether petitioner is liable for the additions to tax for fraud, pursuant to section 6653(b), for the taxable years 1977 through 1982. We hold that he is. (4) Whether the period of limitations for the 1977 taxable year has expired. We hold that it has not. (5) *592 Whether petitioner has unreported income for the 1977 taxable year. We hold that he has. (6) Whether petitioner is liable for the additions to tax, pursuant to section 6654, for failure to pay estimated tax as determined by respondent. We hold that he is. Factual Background
Petitioner resided in Las Vegas, Nevada, at the time the petition was filed. Petitioner is an intelligent and well-educated man, graduating from the University of South Dakota in 1971, with a bachelor's degree in psychology, and from Florida State University in 1973, with a master's degree in social work. Although petitioner is a highly educated person, petitioner did not consult with a legitimate tax professional in making his decision to stop filing income tax returns for the tax years subsequent to 1977. In 1977, petitioner transferred title to an 80-acre parcel of farming property to his brother, Donald Kerr (Donald), in exchange for a cashier's check in the amount of $ 160,000. This piece of property had been given to petitioner in 1968 by his parents and had an adjusted basis in petitioner's hands of $ 16,800. Petitioner expended $ 175 during the course of selling the farmland. Petitioner *593 therefore realized a long-term capital gain in the amount of $ 143,025 in 1977, a gain which he did not report for the 1977 taxable year. From the time petitioner acquired the property in 1968 until the time he sold it to Donald in 1977, Donald paid rent to petitioner for use of the land. On the returns filed by petitioner for his 1975 and 1976 taxable years, petitioner reported rental income of $ 1,400 and $ 3,700, respectively. Petitioner also received $ 2,000 of rental income for the 1977 taxable year. Petitioner did not report this income for the 1977 taxable year. Petitioner was employed for 5 months during 1977, and earned $ 9,222.36 while working for the Veterans' Administration and the Bureau of Indian Affairs. Petitioner did not report this income for the 1977 taxable year. In December 1977, petitioner purchased a charter of the Life Science Church of Billings, Montana (LSC), from William E. Drexler. At trial, petitioner admitted that he and his former wife [2] formed LSC in order to avoid the tax liability which arose as a result of the sale of his parcel of land to his brother. Included with the charter purchase was a document titled "VOW OF POVERTY" accompanied by *594 instructions that stated that, if the member took the vow of poverty, then the individual would "have no income of his or her own for purposes of taxation." Petitioner thereafter officially created LSC and executed the vow of poverty with the intent to thereafter avoid taxation of his earnings. Petitioner learned of LSC's tax avoidance scheme through discussions with a Ms. Rocky Strebel (Strebel), who petitioner claims represented herself as a former IRS agent, and with William Drexler (Drexler). [3] Although petitioner relied on Drexler's advice for purposes of setting up the phony ministry, petitioner never actually met with Drexler; rather, petitioner relied on phone conversations and materials Drexler mailed to him for purposes of setting up the ministry. Similarly, despite the fact that Strebel assisted petitioner with LSC paperwork, petitioner *595 never actually met Strebel, who resided in Arizona during the years in issue, until several years after the scheme had already been up and running. Although petitioner relied on Strebel in setting up LSC, petitioner knew nothing of Strebel's credentials at the time she was assisting him in this tax avoidance scheme. Petitioner further claims he was told that Drexler's LSC had received a determination of tax-exempt status from the IRS; however, petitioner admits he never attempted to ascertain whether this was true or not. We find that petitioner's conduct during this time period is surrounded by an air of bad faith which, inter alia, supports our conclusion that petitioner was not an innocent participant in the creation and maintenance of LSC's tax avoidance scheme. *596 In 1978, petitioner filed a document purporting to be a 1977 Federal tax return, [4] which reported no income and otherwise contained no numerical figures except for those numbers corresponding with petitioner's taxes withheld during 1977, for which petitioner was claiming a refund. Attached to this putative return was petitioner's executed vow of poverty. On November 18, 1977, petitioner and his former wife opened checking account number XX0-698, at First Northwestern *597 National Bank (the Bank) in Billings, Montana, with an initial deposit of $ 3,000. On November 22, 1977, petitioner deposited $ 50,195.48 into account number XX0-698. On December 27, 1977, petitioner opened account number XX9-627 in the name of LSC, with an initial $ 100 deposit, at the Bank, the $ 100 coming from petitioner's checking account, account number XX0-698. On December 29, 1977, petitioner transferred $ 30,492.16 from an apparent cash hoard and $ 51,993.60 from account number XX0-698 to the newly established LSC bank account. On the same day that petitioner deposited $ 30,492.16 in cash in LSC's account, he wrote a check from LSC's account payable to himself for $ 30,000, such check being cashed on the same day. [5]LSC's checking account, account number XX9-627, had a closing balance of $ 52,585.76 on December 30, 1977. On January 3, 1978, petitioner wrote a check from LSC's account payable to himself for $ 50,000. [6] Petitioner thereafter paid personal expenses with checks drawn on LSC's account. *598 Petitioner was employed by the Bureau of Indian Affairs (BIA) from the latter part of 1977, throughout 1978, until May 1979. In 1977, 1978, and 1979, petitioner earned $ 4,048.16, $ 22,879.48, and $ 8,666.58, respectively, from the BIA. Petitioner was not employed during the latter half of 1979. Petitioner commenced employment, however, with the Veterans' Administration Hospital (VA) as a social worker on January 1, 1980, where he worked until August 1980. While at the VA, petitioner received wages of $ 17,400. From August 1980 through the 1982 taxable year, petitioner was employed by the U.S. Air Force as a psychiatric social worker. Petitioner received wages from the Air Force of $ 6,035, $ 19,338, and $ 23,976 for the 1980, 1981, and 1982 taxable years, respectively. During the years in question, petitioner submitted at least two Forms W-4 to his employers, upon which he claimed exempt status for withholding purposes. Petitioner executed these Forms W-4, under penalties of perjury, certifying that he was entitled to claim the exempt status. Petitioner was not entitled to exempt status and intentionally acted in a misleading manner by so executing these Forms W-4. In *599 November 1981 petitioner filed a Form 6450, Questionnaire To Determine Exemption From Withholding, executed under penalties of perjury, with the Internal Revenue Service. This document contained several intentional misrepresentations and blatant lies; for example, petitioner failed to disclose wages earned outside the church although, at the time, he was employed by the U.S. Air Force and received wages of $ 19,338 in 1981. Although the record is extremely vague with respect to when petitioner first came under audit, it seems that, as early as 1979, petitioner's 1977 and 1978 taxable years were being investigated. See United States v. City Bank, 527 F. Supp. 523 (N.D. Ohio 1981) (a third-party summons proceeding in which petitioner and LSC were intervening parties). Petitioner's failure to cooperate with the IRS during the course of these proceedings was evident as early as 1981. During the course of a third-party summons enforcement proceeding, the District Court, with respect to petitioner's and LSC's motion for stay of enforcement, stated that "a stay would be contrary to public interest which necessitates expedient resolution of tax litigation: *600 * * * [Petitioner and LSC] have already successfully frustrated the impending IRS investigation for over two years." Id. at 527. In 1987, petitioner was convicted, pursuant to section 7203, of willful failure to file Federal income tax returns for the 1980 and 1981 taxable years. Furthermore, in petitioner's answer to respondent's request for admissions, petitioner admits that his understatement of income tax for taxable year 1979 was fraudulent with the intent to evade taxes. On January 25, 1994, the date of trial of this matter, petitioner submitted to respondent Forms 1040-NR, U.S. Nonresident Alien Income Tax Returns, for the 1975 [7] through 1982 taxable years. At the top of the front page of each of these returns petitioner has typed: "This return rescinds and supersedes any and all U.S. individual Forms 1040A." Petitioner claims on brief that he is not a resident of the United States and that he filed these Forms 1040-NR because, "compensation, wages, or pay received in * * * [his] home state, not otherwise paid by the United States or an agency thereof, is foreign earned, without the jurisdiction of the United States federal government." Petitioner *601 also sets forth frivolous tax protester analyses of why he is a nonresident, and which of his receipts are income and which are not for purposes of Federal income tax reporting. Although petitioner does report some income on several of the Forms 1040-NR, he intentionally does not report his $ 2,000 rental income in 1977, and the 1977 $ 143,025 capital gain on the 1977 Form 1040-NR, as well as other items for the other years at issue. Petitioner's rationale for not reporting income in accordance with the Internal Revenue Code is premised on meritless tax protester arguments, similar to those which we have seen before and refused to consider. As such, we find petitioner's arguments and assertions frivolous and without merit and hereby refuse to consider them. *602 Prior to trial, respondent prepared, and presented to petitioner, a proposed stipulation of facts based primarily on petitioner's admissions to respondent's request for admissions. Petitioner refused to execute this stipulation and instead submitted a photocopy of respondent's proposed stipulation of facts, with 27 of the 29 facts crossed out and objections to each fact written in the left margin. Attached to this photocopy is petitioner's Exhibit A entitled Response to IRS Stipulation of Facts, wherein petitioner asserts tax protester type objections to respondent's proposed stipulations. As earlier stated, petitioner had already admitted as true the majority of facts contained in respondent's proposed stipulation; furthermore, during the course of trial, petitioner confirmed the truth of these proposed facts during cross-examination. By failing to cooperate with respondent, failing to execute the stipulation of facts, and failing to act reasonably in these proceedings, petitioner has failed to comply with our Rules, thereby unnecessarily protracting these proceedings. We find that petitioner's initial and continuing involvement with LSC, [8] coupled with his implausible and *603 inconsistent behavior and his conduct indicating an agreement with the goals and tenets of LSC, was designed to avoid the detection of his true tax liabilities.
Discussion
As an initial matter, after consideration of the record taken as a whole, we find that petitioner was less than forthright throughout these proceedings, and that his testimony, in light of his demeanor at trial, was not credible; we, therefore, refuse to believe petitioner and his self-serving after-the-fact explanations for his conduct during the years at issue. Throughout trial, as a defense to, inter alia, respondent's fraud determination, petitioner claimed he acted in accordance with advice received from Drexler and Strebel; [9] however, at trial he did not produce them as witnesses to testify on his behalf. *604 Petitioner bears the burden of proof with respect to the deficiencies and the section 6654 additions to tax as determined by respondent. Rule 142(a). Respondent, however, bears the burden of proof with respect to fraud. Rule 142(b). Petitioner, at trial, failed to produce books and records of his financial activities which would indicate the true extent of his receipts and expenses. Petitioner also failed to provide evidence as to whether he filed returns for the years at issue. Neither did petitioner come forward with any documentary or otherwise credible evidence to rebut respondent's determinations. Petitioner has therefore failed to meet his burden of proof. Consequently, we hold that petitioner did not file returns for the 1978 through 1982 taxable years, petitioner did have income as determined by respondent for these years, and respondent's deficiency determinations are therefore sustained. Because we hold that the fraud addition to tax is appropriate with respect to the 1977 taxable year, see discussion infra, we also sustain respondent's deficiency determination with respect to the 1977 taxable year. Petitioner argues that the period of limitations for assessment *605 has expired with respect to the 1977 taxable year. Because we find that part of the understatement of tax required to be shown on petitioner's 1977 return is due to fraud, with the intent to evade tax, the tax may be assessed at any time. Sec. 6501(c)(1). Section 6653(b) provides for an addition to tax for fraud. In order to sustain her determination as to the fraud addition to tax for a year, the Commissioner must prove, by clear and convincing evidence, that some part of the underpayment for that year is due to fraud with the intent to evade tax. Sec. 7454(a); Rule 142(b); Akland v. Commissioner, 767 F.2d 618, 621 (9th Cir. 1985), affg. T.C. Memo. 1983-249; Habersham-Bey v. Commissioner, 78 T.C. 304, 311 (1982); Doncaster v. Commissioner, 77 T.C. 334, 336 (1981). The Commissioner must show that the taxpayer intended to evade taxes by conduct calculated to conceal, mislead or otherwise prevent the collection of such taxes. Wedvik v. Commissioner, 87 T.C. 1458, 1468-1469 (1986); Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). *606 Fraud will never be presumed. Beaver v. Commissioner, 55 T.C. 85, 92 (1970). Fraud may, however, be proven by reasonable inferences drawn from the facts and circumstantial evidence, because presentation of direct proof of a taxpayer's intent is seldom possible. Wedvik v. Commissioner, supra at 1469; Rowlee v. Commissioner, supra at 1123. A taxpayer's entire course of conduct is examined to establish the requisite fraudulent intent. Recklitis v. Commissioner, 91 T.C. 874, 909-910 (1988). To meet her burden, the Commissioner must show by clear and convincing evidence that (1) there was an underpayment, and (2) the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes. Sec. 7454(a); Rule 142(b); Recklitis v. Commissioner, supra at 909. We find, in light of the record, that respondent has met the burden of showing that there was an underpayment of tax for each of the tax years in issue. We now turn to the element of petitioner's *607 intent. Respondent argues that the facts in this case show, by clear and convincing evidence, that petitioner intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes. On the record before us, we find respondent's argument persuasive. The decision of the Court of Appeals for the Ninth Circuit in Bradford v. Commissioner, 796 F.2d 303 (9th Cir. 1986), affg. T.C. Memo. 1984-601, is instructive in the appropriateness of inferring fraudulent intent from various kinds of circumstantial evidence, and indicates several "badges of fraud" that demonstrate fraudulent intent. These badges include: (1) The failure to report, and understatement of, income; (2) the maintenance of inadequate books and records; (3) the concealment of assets; (4) implausible or inconsistent explanations of behavior; (5) a failure to file tax returns; (6) a failure to cooperate with tax authorities; (7) the filing of false Forms W-4; and (8) the failure to make estimated tax payments. Id. at 307-308. In determining whether or not fraud exists, the Court *608 may also look at evidence of prior and subsequent similar acts reasonably close to the years at issue. United States v. Johnson, 386 F.2d 630, 631 (3d Cir. 1967). A taxpayer's failure to file, standing alone, does not establish fraud. Recklitis v. Commissioner, supra at 910-911. When, however, the failure to file is coupled with other badges or circumstances that establish an intent to conceal or mislead, an inference of fraud is justified. Id. at 911; Kotmair v. Commissioner, 86 T.C. 1253, 1260-1261 (1986), and cases cited therein. We have, therefore, examined the record to identify the presence or absence of other indicia of fraud. In light of the record taken as a whole and reasonable inferences therefrom, we now find that the facts in this case show, by clear and convincing evidence, that petitioner intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes. Petitioner's conduct in light of the following badges of fraud, as well as other factors taken from, and reasonably inferred *609 from, the record as a whole, supports this Court's findings: (1) Petitioner's failure to file tax returns for 5 consecutive taxable years, 1978 through 1982, accompanied by his underpayment of tax; (2) petitioner's inadequate recordkeeping and failure to keep any proper records for any of the 6 taxable years here at issue; (3) petitioner's concealment of assets, as shown by the conveyance of assets to LSC, the unexplained, immediate, and substantial withdrawal of cash from LSC's account, and the personal use of conveyed assets thereafter; (4) petitioner's concealment of income and the manner of use of such income; (5) petitioner's implausible explanation as to his belief concerning the establishment of his own LSC ministry, taken in light of his intelligence and advanced education, and, inter alia, the proximity in time of the commencement of this conduct to his substantial capital gain from the sale, in 1977, of a parcel of property and the resulting tax liability; (6) the execution and submission of false Forms W-4 and official documents, for several of the taxable years at issue; (7) petitioner's criminal convictions, pursuant to section 7203, for willful failure to file for the *610 1980 and 1981 taxable years; (8) petitioner's own admission that the understatement of tax for the 1979 taxable year was fraudulent with the intent to evade taxes; [10] (9) petitioner's conduct and involvement with LSC, which was publicly known to be a scam and tax-avoidance organization as early as 1979, during the years here at issue; and (10) petitioner's failure to cooperate with respondent during the course of these proceedings and his frivolous tax protester assertions and arguments. Petitioner was aware of his obligation to file income tax returns and had filed such returns in earlier years. Petitioner contends, however, that, during the years in issue, he believed he could follow the instructions provided by LSC, and not file a return or report *611 his income even though he had full control over LSC's bank account and spent such funds for his own benefit. We have considered petitioner's testimony, as well as the other evidence of record, and conclude that petitioner knew he was not entitled to the claimed tax-exempt status but failed to file returns, thereby causing an underpayment of tax in each year, with the intent to evade tax. For these and other reasons, we sustain respondent's determination of fraud for all the years at issue. We now turn to whether petitioner is liable for the addition to tax under section 6654 for failure to pay estimated tax for the 1978, 1979, 1981, and 1982 taxable years. Petitioner failed to make any estimated tax payments for the years in question. Section 6654 provides for an addition to tax for failure to make the required estimated tax payments. Petitioner bears the burden of proof with respect to this matter. Rule 142(a). The provisions of section 6654 are mandatory, absent a showing by petitioner that an exception applies. Recklitis v. Commissioner, supra at 913. Petitioner failed to adduce any evidence at trial with respect to this issue. Petitioner *612 has thus failed to meet his burden, and, therefore, we find for respondent on this issue. Section 6673 provides that this Court may award damages of up to $ 25,000 to the United States if it appears that (1) proceedings before it have been instituted or maintained primarily for delay, (2) the taxpayer's position in such proceedings is frivolous or groundless, or (3) the taxpayer unreasonably failed to pursue available administrative remedies. The record reveals that petitioner's positions in the immediate pretrial and posttrial stages of this case consist solely of tax protester rhetoric and legalistic gibberish. Respondent prepared a proposed stipulation of facts based on petitioner's earlier admissions; however, petitioner intentionally asserted unreasonable and frivolous arguments and objections for not executing such proposed stipulation. Based on well-established law, petitioner has conducted his case in a frivolous and groundless manner. Moreover, other taxpayers' cases with legitimate arguments were delayed. We cannot and will not continue to entertain tax protester arguments, which delay this Court from conducting legitimate court business, without penalizing the offending *613 parties. In view of the foregoing, we will exercise our discretion under section 6673(a)(1) and require petitioner to pay a penalty to the United States in the amount of $ 10,000. To reflect the foregoing, Decision will be entered for respondent. Footnotes
1. At trial, and in his answer to respondent's request for admissions, petitioner admits that he did not file Federal tax returns for the 1978 through 1982 taxable years.↩
2. Petitioner was married to a Barbara Kerr during the years here at issue. Petitioner and Mrs. Kerr have since been divorced, and she is not a petitioner in this matter.↩
3. William Drexler (Drexler), a former lawyer, was the national head and "Archbishop" of the Life Science Church (LSC). Drexler espoused the view that a principal "belief" of LSC was that Americans were overtaxed and had the right to choose not to pay taxes; therefore, LSC marketed and sold "ministries" as a means of eliminating or substantially reducing a purchaser's income tax liability. Drexler was disbarred in Minnesota, the only State in which he was admitted to practice, in 1971. He was indicted by a Federal grand jury in the Southern District of California on May 5, 1981, for tax-related offenses arising out of his activities in LSC. He was convicted by a jury in November 1981 and was sentenced to a prison term in January 1982. See United States v. Ebner, 782 F.2d 1120, 1122↩ n.1, 1122-1123 (2d Cir. 1986).
4. Although respondent does not raise the issue, we believe that it is likely that the document petitioner filed as his 1977 return would not constitute a proper "return", pursuant to sec. 6011(a), for purposes of commencing the limitation period for assessment because it is insufficient to allow the IRS to calculate the proper tax for 1977. If this were true, then, pursuant to sec. 6501(c)(3)↩, there would be no limitation on assessment, and the tax for 1977 could be assessed at any time, regardless of whether the underpayment for that year was due to fraud.
5. The record is unclear as to what subsequently happened to this $ 30,000.↩
6. The record is unclear as to what subsequently happened to this $ 50,000.↩
7. Petitioner's 1975 and 1976 taxable years are not here at issue; however, it is petitioner's contention in accordance with several tax protester assertions that the Forms 1040-NR were "filed to correct [his previous filings for the 1975 and 1976 taxable years] and make notice of status [to the IRS of petitioner's nonresident alien status]."↩
8. As early as 1979, LSC was exposed in a national news magazine as "a sham church with tax-protester members". United States v. Dube, 820 F.2d 886, 888↩ (7th Cir. 1987).
9. In fact, Rocky Strebel (Strebel), who had petitioner's power of attorney to represent petitioner during the course of the audit of several of the years here at issue, refused to appear and testify at a 1980 summons enforcement proceeding held in Billings, Montana, because, by petitioner's own admission, Strebel stated to him: "'I'd do you more harm than good if I went'."↩
10. Petitioner admitted this in his response to respondent's request for admissions. Even if this were a mistake on petitioner's part, however, we consider this admission as but one badge of fraud, without which we would still uphold respondent's fraud determination.↩