T.C. Memo. 2008-215

UNITED STATES TAX COURT

LOWELL ALAN BAISDEN, ET AL.,[1] Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 9613-05, 1436-06,     Filed September 16, 2008.
             2387-06.

Lowell Alan Baisden, pro se.

<u>Mindy S. Meigs</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

SWIFT, <u>Judge</u>:  Respondent determined deficiencies in
petitioners' Federal income taxes, additions to tax, and fraud
penalties as follows:

---

[1]Cases of the following petitioners are consolidated
herewith:  Lowell A. Baisden, docket No. 1436-06; and Lowell A.
Baisden and Theresa A. Mawson, docket No. 2387-06.

| Year | Deficiency | Additions To Tax/Penalties | |
| | | Sec. 6651(a)(1) | Sec. 6663(a) |
| --- | --- | --- | --- |
| 2001 | $36,013 | --- | $27,010 |
| 2002 | 20,976 | $5,244 | 15,732 |
| 2003 | 62,938 | 3,114 | 47,204 |

After a settlement largely in respondent's favor of the income and expense adjustments determined in respondent's notices of deficiency, the issue for decision in these consolidated cases is whether Lowell Alan Baisden (petitioner) is liable for the fraud penalty under section 6663 or alternatively for the negligence penalty under section 6662(b)(1).

All section references are to the Internal Revenue Code, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Facts stipulated by the parties are so found. At the time the petition was filed, petitioners resided in California.

In 1976 petitioner graduated with a bachelor's degree from the University of Southern California with an emphasis in accounting.

Since 1978 petitioner has been a licensed certified public accountant in California and in Utah. For over 20 years including 2001, 2002, and 2003, through his accounting firm petitioner has been engaged as a sole proprietor in providing accounting and tax return preparation services for clients.

Petitioner typically charged clients monthly retainer fees ranging from $800 to $2,500 for preparing detailed trial balances and quarterly financial statements and for providing Internal Revenue Service audit representation. Petitioner charged clients fees ranging from $300 to $800 for preparation of Federal income tax returns.

Petitioner and his wife Theresa Mawson were married in 1998. Mrs. Mawson has worked as an interior designer but never for petitioner.

Petitioner's books and records for 2001, 2002, and 2003 were not properly maintained. In a ledger which petitioner maintained, petitioner intermingled business expenses with personal and family expenses such as payments relating to his children's education and to a housekeeper. Petitioner's books and records apparently reflected all fees received from clients each year, but the books and records also showed zero net income for the accounting firm for each year in issue.

In an effort to explain his bookkeeping and accounting methods, petitioner explained that since approximately 1998 he had developed for his use and for the use of his clients a novel and insightful tax strategy that may be described generally as follows:

> (1) Booked sole proprietorship income would be totally or almost totally offset by the payment by the sole proprietorship of "royalties" to the owner of the business;

(2) the so-called royalties would not be paid directly to the owner but rather would consist of payments by the sole proprietorship of the owner's personal and family expenses;

(3) the "royalty" payments would be treated as fully deductible by the sole proprietorship, and they would reduce the booked net income of the sole proprietorship to zero; and

(4) the owner would report "royalties" paid with regard to personal and family expenses as "other income" not subject to employment taxes.

The primary savings were apparently intended to be derived from petitioner's tax strategy through the conversion of sole proprietorship business income subject to self-employment taxes into royalties not subject to self-employment taxes.

Petitioner had no written royalty agreement with his accounting firm.

Petitioner maintained 10 different bank accounts--8 in his own name and 2 joint accounts with his wife. For the years in issue, total deposits into petitioner's bank accounts were as follows:

| Year | Total Deposits |
|------|----------------|
| 2001 | $131,518 |
| 2002 | 206,168 |
| 2003 | 336,397 |

In 2001 petitioner purchased a 1999 Lexus LS400. In 2002 petitioner purchased a new 2002 Lexus SC430. In 2003 petitioner purchased a new family residence for $799,000.

On the joint Federal income tax returns that petitioner and his wife timely filed for 2001 and untimely filed for 2003, and on his individual Federal income tax return that petitioner untimely filed for 2002, each of which petitioner prepared, petitioner did not include a Schedule C, Net Profit from Business, relating to his sole proprietorship accounting firm, and petitioner did not otherwise report more than a fraction of the so-called royalty income his accounting firm paid on his behalf.

Rather, petitioner used the above-described royalty strategy for each year to offset to zero or to almost zero the substantial booked income for his accounting firm. Petitioner filed with his Federal income tax return for each year no Schedule C, and petitioner reported zero income relating to his accounting practice. Additionally, on each of his Federal income tax returns petitioner reported only a portion of the so-called royalty payments his accounting firm purportedly paid on his behalf for personal and family expenses (namely, $1,224 for 2001, $20,750 for 2002, and $49,250 for 2003).

Also, on the Federal income tax return for each year, because petitioner reported no net income from his accounting practice, petitioner reported no self-employment tax liability.

Even though petitioner's wife did not sign the 2002 Federal income tax return, and even though petitioner's wife had no

business of her own and performed no paid services for petitioner, the 2002 Federal income tax return shows petitioner's wife as a joint filer, and petitioner attached a Schedule C for his wife showing her as engaged in an accounting practice and as receiving $10,351 from petitioner for "contract services".

The above 2001, 2002, and 2003 Federal income tax returns reported the following tax liabilities, credits, and overpayments:

| Year | Total Reported Tax Liability | Payments or Credits Claimed | Tax Overpayment Claimed |
|------|------|------|------|
| 2001 | $1,488 | $3,910 | $2,422 |
| 2002 | -0- | --- | --- |
| 2003 | 4,351 | 5,000 | 649 |

For 2001 and 2003 petitioners received refunds of the claimed overpayments.

In June 2004 respondent initiated an audit of petitioner and his wife's joint Federal income tax returns for 2001 and 2003 and of petitioner's individual Federal income tax return for 2002. During respondent's audit, petitioner often was unresponsive to respondent's requests for financial information. For 2001 petitioner did not give respondent records of his business expenses, and petitioner refused to extend the period of limitations on assessment.

For all 3 years petitioner provided incomplete records, and those records respondent did obtain were largely received from third parties.

To redetermine petitioner's income, respondent generally used the bank deposits method of proof, and respondent determined that petitioner had unreported gross receipts from his accounting practice of $121,790, $156,800, and $276,006 for 2001, 2002, and 2003, respectively. Respondent determined the failure to timely file addition to tax under section 6651(a)(1) against petitioner for 2002 and against petitioner and his wife for 2003.

Respondent mailed three separate notices of deficiency with respect to the years at issue. For 2001 and 2003 respondent mailed joint notices of deficiency to petitioner and his wife. For 2002 respondent mailed a notice of deficiency only to petitioner.

With regard to the so-called royalties paid by his accounting firm, petitioner offered respondent's agent a number of inconsistent explanations. In conversations with respondent's agent, petitioner explained that because corporations are allowed deductions for certain employee education expenses, an individual taxpayer/sole proprietor also was entitled to deduct children's school expenses on his/her individual Federal income tax returns.

Petitioner claimed he was entitled to business expense deductions for 2001, 2002, and 2003 in the amounts of $97,560,

$156,800, and $276,006, respectively.  On the basis of substantiation provided, respondent allowed petitioner business expense deductions of zero for 2001 (because no records were provided), $43,768 for 2002, and $44,024 for 2003.

Respondent charged petitioner with self-employment tax on petitioner's redetermined Schedule C income.

In an effort to delay respondent's audit, petitioner filed a spurious complaint with the Taxpayer Advocate's Office.

In his answer to petitioner's complaint, respondent charged petitioner with the fraud penalty under section 6663 and alternatively with the negligence penalty under section 6662(b)(1) for 2001, 2002, and 2003.

The parties have now stipulated and agreed that for the years in issue, petitioner's sole proprietorship accounting practice had the following total Schedule C gross receipts, allowable business expense deductions, and net income:

|  | 2001 | 2002 | 2003 |
|---|---|---|---|
| Schedule C gross receipts | $121,790 | $156,800 | $276,006 |
| Business expense deductions | 41,791 | 43,768 | 44,006 |
| Total Schedule C net income | 79,999 | 113,032 | 232,000 |

As part of the settlement, petitioner has agreed that he is liable for the section 6651(a)(1) late filing addition to tax for 2002 and 2003, and respondent concedes that petitioner's wife is

entitled to relief from joint liability under section 6015(f) with regard to any tax deficiency and additions to tax we sustain herein for 2003.

## OPINION

Under section 6663(a) if it is established that any part of an underpayment of tax required to be shown on a return is due to fraud, there is added to the tax a penalty equal to 75 percent of the portion of the underpayment that is attributable to fraud.

Fraudulent intent is defined as "'actual, intentional wrongdoing, and the intent required is the specific purpose to evade a tax believed to be owing.'" Estate of Temple v. Commissioner, 67 T.C. 143, 159 (1976) (quoting Mitchell v. Commissioner, 118 F.2d 308, 310 (5th Cir. 1941), revg. 40 B.T.A. 424 (1939)). To prove a taxpayer's tax fraud, the Commissioner must establish by clear and convincing evidence: (1) The existence of an underpayment of tax; and (2) the taxpayer's fraudulent intent. Akland v. Commissioner, 767 F.2d 618, 621 (9th Cir. 1985), affg. T.C. Memo. 1983-249; Parks v. Commissioner, 94 T.C. 654, 660-661 (1990).

Whether petitioner's fraudulent intent has been established is to be analyzed on the basis of all of the facts and circumstances in evidence. See Stratton v. Commissioner, 54 T.C. 255, 284 (1970).

Fraud is never to be imputed or presumed; however, "its proof may depend to some extent upon circumstantial evidence, and may rest upon reasonable inferences properly drawn from the evidence of record." Stone v. Commissioner, 56 T.C. 213, 224 (1971); see also Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983); Stephenson v. Commissioner, 79 T.C. 995, 1006 (1982), affd. 748 F.2d 331 (6th Cir. 1984).

Courts have developed several objective "badges" of fraud, including:  (1) Understatements of income; (2) the absence of records; (3) implausible or inconsistent explanations of behavior; (4) asset concealment; (5) cash dealings; and (6) lack of cooperation with tax authorities. Bradford v. Commissioner, 796 F.2d 303, 307-309 (9th Cir. 1986), affg. T.C. Memo. 1984-601; Paschal v. Commissioner, T.C. Memo. 1994-380, affd. without published opinion 76 AFTR 2d 95-7975, 96-1 USTC par. 50,013 (3d Cir. 1995).

A taxpayer's experience and education may also be considered. Niedringhaus v. Commissioner, 99 T.C. 202, 211 (1992); Grosshandler v. Commissioner, 75 T.C. 1, 19-20 (1980).

Consistent, substantial understatements of income over several years are highly persuasive evidence of intent to defraud the Government, particularly when combined with other indicia of fraud.  As the U.S. Court of Appeals for the Ninth Circuit has stated:  "repeated understatements in successive years when

coupled with other circumstances showing an intent to conceal or misstate taxable income present a basis on which the Tax Court may properly infer fraud." Furnish v. Commissioner, 262 F.2d 727, 728-729 (9th Cir. 1958) (citing Anderson v. Commissioner, 250 F.2d 242, 249-250 (5th Cir. 1957), affg. in part and remanding T.C. Memo. 1956-178), affg. in part and remanding in part Funk v. Commissioner, 29 T.C. 279 (1957).

The evidence supports imposition against petitioner of the fraud penalties for each year. Petitioner's use of so-called royalty payments to pay personal expenses and to offset or reduce business income is patently improper and nothing more than a fantasy creation of petitioner in an effort to evade the payment of taxes due and owing.

In spite of petitioner's education, training, and experience as an accountant, on the 2001, 2002, and 2003 Federal income tax returns in issue petitioner failed to report substantial income from his business activities and claimed obvious personal expenses as deductible business expenses. Further, petitioner failed to otherwise report (as royalty income) substantial business income.

Petitioner's books and records intermingled business and personal items. Petitioner provided ridiculous explanations for his tax return treatment of income and expenses, and petitioner did not cooperate with respondent's audit.

Petitioner's use of so-called royalty expenses to offset business gross receipts and to eliminate or minimize reported income, income taxes, and self-employment taxes is unfounded and improper.

Petitioner's liability for the fraud penalties determined by respondent is sustained, and the fraud penalty for each year applies to the entire tax deficiency for each year.

For the reasons stated, we sustain respondent's imposition on petitioner of the fraud penalty for each of the years in issue.

Decisions will be

entered under Rule 155.